# Wytheville.

## LAMBERT V. CITY OF NORFOLK.

June 11, 1908.

Absent, Keith, P.

1. CEMETERIES—*Code, 1904, Sec. 1414 as Amended—Adjacent Owners—Property "Damaged."*—The word "damaged" in sec. 1414 of the Code, as amended by Acts 1906, p. 10, declaring that when damage is done to adjacent lands by the establishment of a cemetery the owner whose lands have been damaged shall have a right of action against the persons or corporation establishing said cemetery, is used in the same sense that it is in the Constitution. It means damage done to the *corpus* of the property, or to some right enjoyed in connection therewith. The mere fact that private property is rendered less desirable for some purposes, or that the establishment of a cemetery will offend the taste or feelings of the adjacent owners, or may affect the sentiments of prospective purchasers and thereby render the property less desirable and even less salable, does not constitute damage within the meaning of the statute.

Error to a judgment of the Circuit Court of the city of Norfolk in an action of trespass on the case. Judgment for the defendant. Plaintiff assigns error.

*Affirmed.*

The opinion states the case.

*Thos. W. Shelton,* for plaintiff in error.

*James F. Duncan* and *E. R. F. Wells,* for the defendant in error.

HARRISON, J., delivered the opinion of the court.

This action was brought against the city of Norfolk to recover damages which the plaintiff alleges she had sustained in consequence of the city having established a cemetery adjacent to her lands.

It appears that on February 15, 1906, the city of Norfolk purchased, for cemetery purposes, a tract of land situated on Mason's creek, in the county of Norfolk, two and one-half miles north of the present city limits, containing one hundred and sixty-six and one-half acres, at the price of $320 per acre, and has paid for the same and received a deed therefor. This purchase was made under power conferred on the city by its charter and by virtue of section 1414 of the Code, as amended by an act approved February 9, 1906, Acts 1906, p. 10.

The amended section is as follows: "Sec. 1414. *Location of cemeteries; limitation as to quantity of land.*—Nothing contained in the four preceding sections shall be so construed as to authorize any cemetery to be hereafter established in the corporate limits of any city or town, or within *one* hundred yards of any residence, without the consent of the owner of such residence; or to authorize the conveyance of more than *three hundred* or the condemnation of more than *two* acres of land for use of a cemetery, but when damage is done to adjacent lands by the establishment of such cemetery, whether established by purchase of land or condemnation proceedings, the owners whose lands have been damaged shall have right of action against any person, firm, corporation or municipality establishing said cemetery, said action to be instituted within one year from the establishment of such cemetery." Acts 1906, p. 10.

Prior to this amendment the statute inhibited the establishment of a cemetery within the corporate limits of any city or town, or within four hundred yards of any residence without the consent of the owner of such residence; and further inhibited the conveyance of more than seventy-five acres, or the condemna-

tion of more than two acres of land for use as a cemetery. Acts 1902-3-4, p. 896.

The changes, reducing the distance from a residence at which a cemetery could be established from 400 to 100 yards, and increasing the area that could be bought for cemetery purposes from 75 to 300 acres, were doubtless suggested by the greatly increased demand for burial space, especially within convenient reach of large cities. The right of action, given for the first time by this amendment, was manifestly in furtherance of the recent constitutional provision, that the legislature should not "enact any law whereby private property shall be taken or damaged for public uses, without just compensation." Const. 1902, sec. 58.

The statute, as amended, seeks to protect two objects, namely, residences and land. It protects residences by *inhibiting* the establishment of a cemetery within one hundred yards thereof. This denial of the right to establish a cemetery within one hundred yards of a residence, without the consent of the owner, was doubtless considered a sufficient and effective protection to such residence. The right of action is confined to a recovery for damage done to adjacent lands by the establishment of a cemetery. The limitation of one hundred yards is not measured from the land, but from a residence. It affects residences alone and has nothing to do with the right of action given to an adjacent landowner.

The plaintiff owns and resides on one hundred and twenty-five acres of land, which is adjacent to the rear portion of the tract owned by the city. No part of the plaintiff's land has been taken, and no right appurtenant thereto has been invaded. The record shows that the establishment of this cemetery has in no way interfered with any of the plaintiff's rights of property, such as access, rights of way, water rights, light and air, easements, lateral support, etc.; or that the cemetery is being operated as a nuisance. On the contrary, it appears that she has suffered no such injuries. The plaintiff's declaration, her bill of particulars, and the evidence, all show that her case is

based solely upon the theory that the market value of her land has been diminished by reason of the purchase of the land by the city of Norfolk for cemetery purposes, and by its passage of an ordinance establishing the same as "Evergreen Cemetery." The plaintiff's land is only used for farming purposes. It has never been platted or laid out in streets, and no lots there have ever been offered for sale.. In view, however, of the rapid growth of Norfolk, the plaintiff expects her land to have a future value for residential purposes, and she thinks that an adjacent cemetery will greatly impair its value for such purposes. It is clear that the claim of the plaintiff to damages rests entirely upon sentimental considerations, and the prejudice that some people have to living near a cemetery.

Such considerations as constitute the basis of the plaintiff's claim were not recognized at common law as ground for a recovery of damages. At common law, it was generally damage done to the *corpus* of the plaintiff's property, or to some right enjoyed by the plaintiff in connection therewith, and not to the feelings, for which a recovery was allowed. The inconvenience had to be something more than fancy or fastidiousness. The law did not recognize damage to the feelings or mind, commonly called sentimental damage, but applied the maxim, *"Damnum absque injuria."*

This doctrine of the common law is aptly illustrated by the case of *Monk* v. *Packard,* 71 Maine, 309, 36 Am. Rep. 315. There the plaintiff sued an individual for damages suffered on account of a private burying ground, located wholly on the land of the defendant, the nearest grave being forty feet from, and opposite to, the plaintiff's sitting-room, and in plain view of his front windows and door. He claimed that it rendered his residence uncomfortable and the enjoyment of his property disagreeable, and that it had lessened its market value. The jury allowed $25 damages, and the defendant appealed. It was held that the verdict was against the law and should be set aside, the court saying: "Nor can the verdict be sustained upon

the sole ground of the cemetery's proximity to the plaintiff's premises, and the consequent depreciation of the market value of his property. For a repository of the bodies of the dead is as yet indispensable, and wherever located it must *ex necessitate* be in the vicinity of the private property of some one, who might prove its market value injuriously · affected thereby. *New Orleans* v. *Wardens &c.*, 11 La. An. 244. But assuming that the jury in respect to these matters, found in behalf of the defendants, and concluded that there was no injury to the plaintiff's property or to his physical health or comfort, and based their verdict solely upon the ground that, on account of its relative position with the plaintiff's house, the cemetery inevitably meets his immediate view whenever he looks from the north window of his sitting-room or steps from his door, and that thereby the comfortable enjoyment of his dwelling house is interfered with—then the defendants contend that the verdict is against law—upon the ground that such discomfort is one purely mental, and is not a cause of action." This contention of the defendants was also sustained, the court, quoting from Cooley on Torts, saying: "The inconvenience must be 'something more than fancy, delicacy or fastidiousness.' * * * If this burial ground is, under the circumstances, a private nuisance, then is it also a public nuisance to every traveler who passes on that road, as well as every soldiers' monument in the country."

It is plain, therefore, that, under the common law, the plaintiff would not be entitled to damages against the city of Norfolk on account of the establishment of "Evergreen Cemetery," merely because it offended her taste or feelings, or might affect the fastidious sentiments of some of her prospective purchasers of lots.

This was the state of the law when the Constitution of 1902 was adopted. This instrument, for the first time, provides that the legislature shall not enact any law whereby private property shall be taken or *damaged* for public uses, without just com-

pensation. In section 1414 of the Code, as amended, the word "damaged" is used in the same sense that it is in the Constitution. The statute simply carries out the constitutional provision on the subject.

Before the adoption of the present Constitution, private property could be damaged by a municipality, acting under legislative authority, and no compensation for such damage could be recovered. *Home Building Co.* v. *Roanoke,* 91 Va. 52, 20 S. E. 895, 27 L. R. A. 551; *Myers* v. *City of Richmond,* 172 U. S. 82, 43 L. Ed. 374, 19 Sup. Ct. 106. In each of these cases, and in others that might be cited, a municipal corporation, acting under legislative authority, had been the offender, and each of them was decided on the general principle that these cities, although they violated common law rights of property, nevertheless did so under authority of the legislature; and that the legislature had the power, under the then existing Constitution, to grant such authority, without requiring damages to be paid, inasmuch as the acts done did not constitute a "taking" of property, within the meaning of the constitutional provision then in force. In each of the cases to which we have adverted, the act done constituted a violation of a common law right, and would have been actionable if it had been done by an individual. Relief was denied, not because no right had been invaded, but because there was legislative authority for the invasion.

This line of decisions was referred to and commented on in the debates on the subject of inserting the "damage clause" in the Constitution of 1902; and their effect, in making the right of recovery for an admitted injury depend upon whether the wrong was inflicted in pursuance of legislative authority or otherwise, was repeatedly criticised. It is clear that the law, as illustrated by the decisions which we have just mentioned, was regarded by the convention as unsatisfactory, and that it was the desire to remedy that condition of things which led to the insertion in the Constitution of the words "or damaged,"

thereby inhibiting the legislature from enacting any law whereby private property might be taken "or damaged" without providing for compensation. The convention was not attempting to create any new right incident to land, but was providing a right of action, which, before the enactment of this provision, did not exist where the injury was inflicted under legislative authority. The meaning of the word "damaged" was neither enlarged nor restricted by the Constitution. It must, therefore, have been used in the same sense and with the same meaning that it had at common law—not damage to the feelings, tastes or sentiments, but physical damage to the *corpus* or to some right of property appurtenant thereto.

This provision of the Constitution of 1902 has been considered by this court in two cases—*Swift* v. *Newport News*, 105 Va. 108, 52 S. E. 821, 3 L. R. A. (N. S.) 404, and *Tidewater Railway Co.* v. *Shartzer*, 107 Va. 562, 59 S. E. 407. In the *Swift* case, the injury complained of was the physical establishment of a new grade on a street on which the plaintiff's property abutted. The injuries which it was claimed the plaintiff had suffered were injuries to his right of access to his property. No question of sentimental damages, or depreciation in value, caused by sentimental considerations, was involved in the case; but the court, both in the *Swift* case and in the *Shartzer* case, cited with approval the leading case of *Rigney* v. *Chicago*, 102 Ill. 64, which case had also received the approval of the Supreme Court of the United States in the case of *Chicago* v. *Taylor*, 125 U. S. 16¢, 31 L. Ed. 638, 8 Sup. Ct. 820.

The *Rigney* case appears to have been the first case decided under the constitutional provision embodying the "damage clause." In that case it was held that the damages contemplated were those resulting from the direct physical disturbance of a right, either public or private, which a landowner enjoyed in connection with his property, and which gave to it an additional value. The court does not say in this case that the land must be actually invaded or disturbed in order to give its

owner a right for damages under the constitutional provision, but that it was sufficient if some right connected with the land had been disturbed, basing the right of damages on the ground that a right had been disturbed.

The question was more fully discussed in the *Shartzer* case. That was a condemnation proceeding by the Tidewater Railway Company. Julia A. Shartzer owned land adjoining that which was condemned and the question involved was in regard to the proper measure of her damage and the items which it was proper to consider.

The case at bar is stronger than the *Shartzer* case. Here the city of Norfolk has not sought to condemn the plaintiff's property, but has established a cemetery on its own property, and no property rights of the plaintiff have been in any way affected or disturbed thereby. She simply objects to the presence of a cemetery adjacent to her land.

In the *Shartzer* case, *supra,* Judge Keith says: "A person who is asking nothing with respect to his property is limited in the use of his own property only by the maxim, that he must enjoy it in such a manner as not to injure that of another; or, less literally but more accurately, perhaps, 'so use your own property as not to injure the rights of another.' "

In further discussion of the subject, it is said, quoting with approval the following language from the opinion of the court in the case of *Eachus* v. *Los Angeles Consol El. R. Co.*, 103 Cal. 614, 37 Pac. 750, 42 Am. St. Rep. 149: "The Constitution does not, however, authorize a remedy for every diminution in the value of property that is caused by a public improvement. The damage for which compensation is to be made is a damage to the property itself, and does not include a mere infringement of the owner's personal pleasure or enjoyment. Merely rendering private property less desirable for certain purposes, or even causing personal annoyance or discomfort in its use, will not constitute the damage contemplated by the Constitution; but the property itself must suffer some diminution in substance,

or be rendered intrinsically less valuable, by reason of the public use. The erection of a county jail or a county hospital may impair the comfort or pleasure of the residents of that vicinity, and to that extent render the property less desirable, and even less salable; but this is not an injury to the property itself so much as an influence affecting its use for certain purposes. But whenever the enjoyment by the plaintiff of some right in reference to his property is interfered with, and thereby the property itself is made intrinsically less valuable, he has suffered a damage for which he is entitled to compensation."

The learned judge, further quoting with approval, says: " 'A recovery has not been allowed,' says Lewis on Eminent Domain, 'in any case unless there was some physical injury to the plaintiff's property, or, by noise, smoke, gases, vibrations or otherwise, an interference with the street in front of his property, or with some right appurtenant thereto, or which he was entitled to make use of in connection with his property. On the other hand, several cases have held that mere depreciation, caused by the proximity of a public improvement, afforded no ground for redress.' " Lewis on Em. Dom., sec. 236.

Judge Dillon makes the following clear and forcible statement of the law applicable to the subject under consideration: "The words 'injured or damaged,' found as they are in the eminent domain clause relating to the taking or appropriation of property for public use, as well as the history of the origin and cause of this provision, and a consideration of the mischief intended to be remedied, show that it was not the intention of the constitutional amendment to create a right and to give a remedy in all cases of consequential damage which may result from the exercise of legislative power in making public improvements, or even from the appropriation of private property, or for injuries to private property for public use. A city, for example, under legislative authority, might condemn land for the purpose of establishing a hospital thereon, or a prison, which, if established, would have the consequential effect to

injure or depreciate the market or actual value of property in the neighborhood. Such injuries, however, would not in our judgment, be within the constitutional amendment. This amendment must, as it seems to us, be limited to cases where the *corpus* of the owner's property itself, or some appurtenant right or easement connected therewith, or by the law annexed thereto, is directly (that is, in general if not always, physically) affected, and is also specially affected (that is, in a manner not common to the property owner and to the public at large); and such direct and special injury must be such as to depreciate the value of the owner's property. These elements 'concurring' his property is damaged within the meaning of the constitutional amendment; and to the extent of such diminished value, beyond damages sustained by the public at large from the improvement, the property owner is, under the constitutional amendment, entitled to compensation. It may, perhaps, be premature to affirm that the meaning of the word 'damaged,' as used in the recent constitutional amendments, is absolutely confined to cases where the common law would have given a remedy for injuries to property or property rights, if the legislative authority to do the act which caused the damage had not, aside from such constitutional amendment, deprived, or been previously construed to deprive, the owner of his right to compensation therefor; and yet such is, in our judgment, its main if not exclusive purpose and effect." Dillon on Mun. Cor., sec. 587d.

It follows from what has been said that the plaintiff is not entitled to recover, having suffered no injury because of the establishment of the cemetery that is recognized by the law as a wrong to be compensated in damages.

The instructions given by the circuit court were in harmony with the views herein expressed, and without prejudice to the rights of the plaintiff.

The judgment complained of must be affirmed.

*Affirmed.*