# Richmond.

## CITY OF LYNCHBURG v. DON PRESTON PETERS.

March 19, 1931.

Present, Prentis, C. J., and Holt, Epes, Hudgins and Browning, JJ.

The opinion states the case.

*T. G. Hobbs* and *S. V. Kemp,* for the plaintiff in error.

*Harrison, Long & Williams,* for the defendant in error.

HOLT, J., delivered the opinion of the court.

In this action of trespass on the case there was a declaration, a demurrer thereto sustained and an amended declaration which also was demurred to. That demurrer was overruled and in due course, upon trial, plaintiff obtained a verdict and judgment for $2,500.00, now before us on a writ of error.

There are, in the city of Lynchburg, four city blocks bounded, roughly speaking, on the north by Twelfth street,

on the south by Washington street, on the east by Church street and on the west by Clay street. Court street, as laid off, runs parallel to Church street and to Clay street and half way between them. In like manner this plat of land is bisected by Thirteenth street which runs from Church street to Clay street. A plat showing all of this appears in *City of Lynchburg* v. *Peters,* 145 Va. 1, 133 S. E. 674, 677. It may be said *in limine* that this case is a sequent to that and is in a large measure controlled by it.

Washington street, at the intersection of Court street, is about sixty feet above the elevation of Twelfth street and Clay street, at the intersection of Thirteenth street, is sixty-seven feet above the elevation of Church street. Church street is well paved and generally used. Court street from Twelfth to Washington streets and Thirteenth street from Church to Clay streets were unpaved and relatively unimproved. Territory which centers near the intersection of Court and Thirteenth streets had been for many years used as a common dump to which were attached those disagreeable features usually attendant upon places of like character. Across this dump was Court street, scarcely to be dignified by the name of street at all as is manifest from photographs made a part of the record.

The city conceived the idea of converting this land into a playground, athletic field and stadium. This purpose was carried out and those portions of Thirteenth street and Court street which lay within the boundaries of this athletic field were vacated and closed. Court street was closed to a line which extended across it as a continuation of the north boundary of the line of Dr. Peters' lot, which for 132 feet, touches the athletic park, but his lot nowhere touches Thirteenth street.

In 1919, Dr. Peters bought a lot and residence to be converted into a private hospital. Substantial improvements were made, the necessary equipment was installed and this hospital was open for service in March, 1920, and was operated

until 1924, when it was closed because of the location of this municipal enterprise. The Peters' lot fronts 148 feet on Church street and runs back 264 feet to Court street with a frontage there of 159 feet. No part of this lot as we have seen touched Thirteenth street and no part of it touched Court street where it has been closed. In other words, Dr. Peters is not an abutting landholder and has none of those special rights which such landholders sometimes have in the streets which adjoin their property. He is not entitled to damages in that capacity and he is not entitled to damages for inconveniences shared with the general public and which differ in degree only and not in kind.

When the city's purpose became known Dr. Peters sought to stay its hand and brought a suit in chancery to enjoin this public improvement. The issues in that suit, as stated by Chichester, J., were:

"(1) The right of the city of Lynchburg to permanently close the streets referred to, and thereafter, under the facts presented by the record here, to use the vacated area together with the lots surrounding such area, which are owned by the city, for a public park.

"(2) Whether a park or stadium, such as is contemplated, is a nuisance *per se.*"

In it the court held that the city had authority to close these streets both under general law and under its charter and that no right rests in Dr. Peters as a member of the general public to complain. He had, as we have seen, no rights as an abutting lot holder. This was manifestly a sound conclusion. One who lived a mile away surely could not be heard to complain. The fact that another who lived nearer would be inconvenienced to a greater degree likewise affords no grounds for relief for the inconvenience would be in degree and not in kind. Not until it is made to appear that Dr. Peters has suffered therefrom some special wrong can the city be called upon to respond in damages.

Judge Chichester, after noting the fact that some authorities hold that property owners whose lots abut on closed streets but not on closed portions thereof are entitled to special consideration, said that claim was against the weight of authority and quoted with approval this statement of the law from *Gerhard* v. *Seekonk River Bridge Com'rs,* 15 R. I. 334, 5 Atl. 199:

■ "The question is whether abutters upon a public street simply as abutters have any right of travel in the street, as against the State, which would entitle them to compensation if the street be obstructed under the authority of the State, in a case where no portion of the street in front of their abutting estates is occupied or obstructed. We do not think that they have any such right. The easement of travel which they enjoy is a public easement, and they enjoy it simply as a portion of the public. It is competent for the State, representing the public, to authorize the entire discontinuance of a street and *a fortiori* its partial obstruction, at least so long as the abutters have, as they have in the present case, *access* and *egress* to and from their estates by other ways."

Dr. Peters' hospital fronts on Church street, a paved and adequate thoroughfare. It abuts on Court street, and Court street, south, is still open. It is true that the approach to Washington street is quite up grade but that in Lynchburg is not an unusual condition. Its northern extension was across a dump heap and unimproved. He has ample access to and egress from his estate by other ways.

On this issue we are of opinion that this court has already held that Dr. Peters suffered no special damage by reason of the closing of these streets and could not complain. We are further of opinion that the conclusion which we have heretofore reached is, for reasons set forth in our first opinion, sound and is supported by a decided weight of authority in this country at large and by decisions of our own court.

In *Bowe* v. *Scott,* 113 Va. 499, 75 S. E. 123, it was said:

"The principal question presented by this appeal involves the right of individuals (owning real estate in the city of Richmond, but whose lots do not abut on the section of the public alley obstructed, and who have not suffered any peculiar damage therefrom) to have declared null and void a city ordinance authorizing the closing, for the period of thirty years, of a public alley reaching from Shafer street to Harrison street, to the extent to which it bisects the respective lots of the appellants, Elizabeth S. Scott and E. T. D. Myers, Jr.; also to enjoin the defendants from closing any portion of the alley, or from exercising any rights under 'the void ordinance'."

The ordinance there was sustained and the alley closed.

The right of the city to close these streets to the extent that they were closed does not come to us as an open question. It has likewise been held that this vacated area might be used for a public park and stadium and that such use is not a nuisance *per se*. This use, subject to reasonable rules and regulations, is a public use. Judge Chichester also said with perfect logic and consistency that this use might degenerate into a misuse. Such a misuse would support injunctive reliefs and it might support an action for damages, but the right to close these streets and the right to establish this park and this stadium at this place touched no private right of Dr. Peters. It was for these particular reasons that the injunction has heretofore been refused.

Lynchburg, as Judge Chichester pointed out, was authorized by general law and by its charter to establish this park. Its establishment was therefore a governmental act and not less so because there had been no express mandate. *Tindley* v. *City of Salem*, 137 Mass. 171, 50 Am. Rep. 289. Where and when to build it was left to the good judgment of the city and there can be no appeal from that judgment to the courts. McQuillen Mun. Corp., Vol. 6, sec. 2793; *Ferguson* v. *Board of Supervisors*, 133 Va. 561, 113 S. E. 860.

██ "A municipal corporation is not liable for the failure to exercise, or for the negligent or improper exercise of, its governmental, legislative, or discretionary powers, nor is it liable for the *ultra vires* acts of its servants. But for failure to exercise, or for negligence in the exercise of, those powers and privileges which are conferred upon it for its private advantage, usually called proprietary or ministerial, the municipality is liable in the same manner as a private individual." *Richmond* v. *Warehouse Corp.*, 148 Va. 60, 138 S. E. 503, 506.

██ The city, in the establishment of this park and playground, was acting in its governmental capacity and committed no legal wrong. It does not contend that it has the right to convert this lawful undertaking into a center of disorder and so it is not necessary for us to follow the doctrine of municipal immunity in governmental undertakings further. We are, therefore, fully in accord with Judge Chichester's conclusions in the chancery suit which were that the city had the right to close these streets and to establish this playground and that in so doing no liability was incurred.

The question of damages was to a certain extent left open. It was in substance held that Dr. Peters might recover if this closing damaged him in a way that it did not damage the general public. He has shown no such right to recover. The location of the stadium, etc., was an act done in the exercise of governmental powers and so for it there can be no recovery.

He has not been "damaged" in any constitutional sense. *Lambert* v. *City of Norfolk*, 108 Va. 259, 61 S. E. 776, 779, 17 L. R. A. (N. S.) 1061, 128 Am. St. Rep. 945; *Van DeVere* v. *Kansas City*, 107 Mo. 83, 17 S. W. 695, 28 Am. St. Rep. 396. In the *Lambert Case* this clear statement of the law is expressly approved:

 "The words 'injured or damaged,' found as they are in the eminent domain clause relating to the taking or appropriation of property for public use, as well as the history of the origin and cause of this provision, and a consideration of

the mischief intended to be remedied, show that it was not the intention of the constitutional amendment to create a right and to give a remedy in all cases of consequential damage which may result from the exercise of legislative power in making public improvements, or even from the appropriation of private property, or for injuries to private property for public use. A city, for example, under legislative authority, might condemn land for the purpose of establishing a hospital thereon, or a prison, which, if established, would have the consequential effect to injure or depreciate the market or actual value of property in the neighborhood. Such injuries, however, would not in our judgment be within the constitutional amendment. This amendment must, as it seems to us, be limited to cases where the *corpus* of the owner's property itself, or some appurtenant right or easement connected therewith, or by the law annexed thereto, is directly (that is, in general if not always, physically) affected, and is also specially affected (that is, in a manner not common to the property owner and to the public at large); and such direct and special injury must be such as to depreciate the value of the owner's property. These elements 'concurring,' his property is damaged within the meaning of the constitutional amendment; and to the extent of such diminished value, beyond damages sustained by the public at large from the improvement, the property owner is, under the constitutional amendment, entitled to compensation. It may, perhaps, be premature to affirm that the meaning of the word 'damaged,' as used in the recent constitutional amendments, is absolutely confined to cases where the common law would have given a remedy for injuries to property or property rights, if the legislative authority to do the act which caused the damage had not, aside from constitutional amendment, deprived, or been previously construed to deprive, the owner of his right to compensation therefor; and yet such is, in our judgment, its main if not exclusive purpose and effect." Dillon on Mun. Cor., sec. 587-d.

It follows that section 58 of our Constitution has no application, and that plaintiff's right to recover to the extent that it exists at all stands upon the common law.

Upon what does his claim for relief rest? It is well stated in his brief:

"The plaintiff has not sued for damages on account of unlawful acts that may have occurred from time to time in the stadium, such as crap shooting and profane language, but on account of the erection and operation of the stadium so close to his home that the noises emanating from it, whether normal and usual, or unlawful (the latter, if any, being ordinarily an indistinguishable element in the riot of sound), destroy the peace and quiet and comfort of his home, and greatly impair its market value."

It is said that in the operation of these playgrounds the city is acting in a private and not public capacity and we are cited to *Townsend* v. *Norfolk Ry. & L. Co.,* 105 Va. 22, 52 S. E. 970, 4 L. R. A. (N. S.) 87, 115 Am. St. Rep. 842, 8 Ann. Cas. 558.

Judge Chichester was of opinion that the principles applied in *Fisher* v. *Seaboard Air Line Ry. Co.,* 102 Va. 369, 46 S. E. 381, 1 Ann. Cas. 622, govern, and quotes with approval this statement therefrom:

"I think it is agreed on all hands that if the legislature authorizes the doing of an act which, if unauthorized, would be wrong and a cause of action, no action can be maintained for that act, on the plain ground that no court can treat that as wrong which the legislature has authorized, and consequently the person who has suffered a loss by the doing of that act is without remedy, except in so far as the legislature has thought proper to provide for compensation for him."

This is in turn copied from *Hammersmith; etc., Ry. Co.* v. *Brand,* reported in 4 English & Irish App. 171. It is earnestly contended that the *Fisher Case* has no application and that we are governed by the exception engrafted thereon by Keith,

P., in *Townsend* v. *Norfolk Ry. & L. Co.*, 105 Va. 22, 52 S. E. 970, 976, 4 L. R. A. (N. S.) 87, 115 Am. St. Rep. 842, 8 Ann. Cas. 558, who said:

"We cannot admit that a public service corporation, acting without negligence, is, under all circumstances, irresponsible for injuries which are the necessary consequence of the performance of its authorized functions. There must be something more than authority to do the act complained of. It must be an act which the corporation is required to perform— a duty it owes and which has been imposed upon it by the legislative act granting the charter by which it exists—or at least it must appear that the particular act complained of and immunity from its consequences are within the contemplation of the legislature."

There the court was dealing with the public and private functions of a public service corporation and such a corporation was there held liable for inconveniences occasioned by its power house, the location of which was said to have been made by that company in its private and not in its public capacity.

If we apply one of the tests there laid down we find that "at least it must appear that the particular act complained of and immunity from its consequences were within contemplation of the legislature." There is no difficulty in reaching the conclusion that the legislature, in authorizing a city to build playgrounds and stadiums, had in contemplation the fact that games were to be played in them and that they would be accompanied by that noise and confusion which invariably follow and which to many people is an added charm.

Dust and shouting were to be expected. Athletic contests would be drab affairs if the cheer leader could not swing into action. Since incidental disorder is not relied upon and there is nothing in the record beyond such casual occurrences to show an improper use of this athletic field this action must fail. Plaintiff's position drifts down to this. He claims dam-

ages because a stadium located where the city had a right to place it, is used for those purposes for which it is primarily designed. So hedged about it would be as valuable as a swimming pool without water.

The heart of plaintiff's case is that football games, baseball games, Hallowe'en parades and kindred amusements are accompanied by noise, confusion and apparent disorder to an extent which makes the orderly conduct of his hospital impossible. The record shows that they are not more than might in reason have been expected. It is also said that an exclusive residential district has been made less desirable. That may be, but this is a matter of taste. There are people who like to live near a playground and some regard the establishment of a hospital in such a community as exceedingly undesirable, notwithstanding the fact that it is a valued and necessary adjunct of modern society.

Since the plaintiff is not entitled to recover upon the merits of his case we have not deemed it necessary to discuss the demurrer, the instructions and other matters covered by the assignments of error.

Dr. Peters cannot recover because these streets were closed. He has not shown any damage special to himself. He cannot recover because a playground, etc., was located near his hospital. The selecting of its site was a governmental act. He cannot recover because of its operation which has been attended by nothing that must not have been necessarily anticipated. The city is entitled to final judgment and it is so ordered.

*Reversed.*