# CIRCUIT COURT OF THE CITY OF CHESAPEAKE

George Osipovs
and Margaret Osipovs

v.

Chesapeake Airport
Authority

November 16, 2007

Case No. CL04-1025

BY JUDGE RANDALL D. SMITH

Plaintiffs George and Margaret Osipovs bring this action for a declaratory judgment proceeding under Va. Code § 8.01-184, 1950, as amended, against Defendant Chesapeake Airport Authority ("CAA"), seeking a determination that their private property has been taken or damaged for a public use without just compensation within the meaning of Article I, § 11, of the Constitution of Virginia.

The CAA is a political entity established by the General Assembly in 1966. Act of March 10, 1966, ch. 133, 1966 Va. Acts 232. Pursuant to the enabling act, the CAA has the power of eminent domain. 1996 Va. Acts 232, § 4(b). The CAA owns and operates the Chesapeake Municipal Airport ("CMA"), which is located approximately one and one half miles from the Landowners' property. The Landowners' property address is 3416 West Landing Drive in the City of Chesapeake, Virginia.

The Court has heard the *ore tenus* evidence of witnesses, considered pretrial and post-trial memoranda and has considered the arguments of counsel. The Court stands ready to rule on Plaintiffs' Motion for Declaratory Judgment.

Most of the facts in this case are not in dispute. The parties are familiar with them; therefore, the Court will recite only those basic facts necessary to resolve the disputed issues.

The property in question was purchased in March 2001 by Plaintiffs for $246,600 and sold in April 2006 for $527,450. Operations began at the CMA in 1977. The last runway extension was completed at the CMA in 1999. Until early 2003, when the CMA began using instrument landing systems ("ILS"), surrounding landowners, including the plaintiffs, coexisted peacefully with the CMA. The ILS allows airplanes to land any time of day, in inclement weather, and allows for a wide variety of aircraft including jet aircraft to land at the Airport. The ILS takes aircraft in a landing approach to the Airport in a path directly over plaintiffs' property. Prior to activation of the ILS, pilots would use a visual approach to land at CMA. The visual approach consisted of a box pattern that seldom, if ever, caused aircraft to fly low over Plaintiffs' property or subdivision. After the installation and use of the ILS, the number and type of aircraft based at the Airport, air traffic landing and taking off from the Airport, and the amount of flights in the early morning and late evening hours all significantly increased. The CMA is now home to jets as well as a helicopter. Military helicopters pilots and student pilots practicing to stay current in their instrument certification frequently use the ILS approach over Plaintiffs' property for practice landings known as "touch and goes."

In March 2003, Plaintiffs and surrounding property owners began to complain to the CMA regarding low-flying airplanes and the increase in the number of flights. Plaintiffs specifically complained of the late night landings and take-offs, the smell of fumes, and the vibration caused by aircraft passing low over their property. Defendant and Plaintiffs met several times in an attempt to resolve the situation. Defendant eventually instituted a Noise Abatement Procedure in an effort to discourage pilots from taking off over the Plaintiffs' property. This policy, however, had limited effect as it was a voluntary procedure and did nothing to resolve the nuisance caused by aircraft landings. A regularly occurring flight is that of a large aircraft for LabCorp that both lands and takes off twice a day, four to five days a week with the last flight of the day being after 11 p.m.

The Court finds Plaintiffs' testimony to be credible. They presented logs, videotapes, and other witnesses who corroborate their testimony. This action was not commenced in haste and was done so only after failed attempts to work with Defendant to abate the nuisance created by the aircraft.

Plaintiffs and Defendant had noise engineer experts testify at trial. Each expert took a different approach in reaching their respective opinions regarding the effects of aircraft noise on residential property. Plaintiffs' expert,

Mr. Paradis, relied on measurements taken on the ground at the property and determined the decibel levels to be in a range not compatible with residential use. Defendant's expert, Mr. Baldwin, used FAA compatibility studies, which use DNL contours based upon noise levels attributed to the make and model of aircraft based at the Airport. These maps use averages over a 24-hour period and assign a higher score to flights during the hours of 7 p.m. through 10 p.m. Mr. Baldwin opined that the noise levels at Plaintiffs' property were compatible with residential use.

In the Court's opinion, the use of sound averages negates the significant effect of a few, but extremely loud events, which occur on a regular basis. While it may be helpful to use FAA noise contour maps in determining the overall compatibility of an airport to a particular area, it does not provide meaningful information related to the effects of loud and regular noise on the value of a home already in existence near an airport. The Court finds the testimony of Mr. Paradis more persuasive on the issue of degree of noise but does not concur with his opinion regarding compatibility for residential use.

*Law*

Article I, § 11, of the Constitution of Virginia provides that the General Assembly shall not pass any laws "whereby private property is taken or damaged for public uses, without just compensation." This allows landowners to enforce their constitutional right to compensation in a common law action, which is based upon implied contract, both where the property is taken or where it is damaged for public use. *Jenkins v. County of Shenandoah*, 246 Va. 467, 470, 436 S.E.2d 607, 609 (1993). Property is "taken" in constitutional terms if the government's action deprives the property of all economic use. *Board of Supervisors v. Omni Homes*, 253 Va. 59, 72, 481 S.E.2d 460, 467 (1997). Property is damaged "when an appurtenant right connected with the property is directly and specially affected by a public use and that use inflicts a direct and special injury on the property which diminishes its value. *Id.*, quoting *Lynchburg v. Peters*, 156 Va. 40, 49, 157 S.E.2d 765, 772 (1931). In Virginia, diminution in value of property is compensable only where the violation of a specific right contained in a property owner's "bundle of rights" is established. *Lambert v. City of Norfolk*, 108 Va. 259, 268, 61 S.E. 776, 778-79 (1908).

Because the parties' arguments and positions are stated in great detail in their briefs, the Court will not reiterate them in this opinion, and will only mention the positions in general terms unless otherwise necessary for its ruling.

The issues to be decided in this case are (1) whether, under the facts presented, a constitutional taking under Article I, § 11, occurred; and/or (2) whether the plaintiffs established that they have suffered constitutional damages. An affirmative finding under either of the issues would allow the Landowners to proceed to a jury trial to determine the measure of damages pursuant to Va. Code § 8.01-187, 1950, as amended.

Plaintiffs and Defendant rely on many of the same cases to support their respective positions, such as *United States v. Causby*, 328 U.S. 256 (1946); *United States v. Griggs*, 369 U.S. 84 (1962); and *Richmond, Fredericksburg & Potomac RR. v. Metropolitan Washington Airports Auth.*, 251 Va. 201 (1996). *Causby* enlarged the definition of "take" under the Fifth Amendment of the United States Constitution, and *Griggs* made it applicable to states via the Fourteenth Amendment of the United States Constitution.

In *United States v. Causby*, 328 U.S. 256 (1946), plaintiffs operated a commercial chicken farm and lived on their property. The property was adjacent to an airfield that had been converted for use as a practice airfield for the military during World War II. The landing path of the runway caused airplanes to pass over plaintiffs' property at 83 feet, which was 67 feet above the house, 63 feet above the barn and 18 feet above the highest tree. The disturbance from noise and vibration destroyed the use of the property as a chicken farm and caused the plaintiffs nervousness, fright and loss of sleep. The Court found the government had taken an easement over plaintiffs' property. While a taking in the sense of a physical interference or use of the surface of the land had not occurred, the Supreme Court of the United States determined that a servitude had been imposed upon the land. At common law, ownership of land extended to the heavens, however, under an analysis in the modern world, this could not continue. The Court balanced the need for air traffic with the "bundle of rights" which inure to property owners upon acquiring land. The Court ruled that air traffic over private land, which is so low and frequent as to be a direct and immediate interference with the enjoyment and use of the land, are as much an appropriation of it as the more conventional method by entry upon the land. *Id.* at 264.

*Causby*, *Griggs*, and other federal court cases provide useful analyses under the Fifth Amendment of the United States Constitution. Plaintiffs in the present case seek relief only under Article I, § 11, of the Virginia Constitution. The Supreme Court of Virginia has used these cases as guidance and cited federal cases involving the Fifth Amendment of the United States Constitution in interpreting Article I, § 11, of the Virginia Constitution. *City of Virginia Beach v. Bell*, 255 Va. 395, 498 S.E.2d 414 (1998). While guidance from federal decisions may have been useful to the Supreme Court of Virginia,

when new issues such as regulating takings have been considered, it does not mean that federal case law controls the interpretation of the Virginia Constitution.

As previously stated, in Virginia, property is considered taken for constitutional purposes if the government's action deprives the property of all economic use. *Board of Supervisors v. Omni Homes*, 253 Va. at 72. Here, Plaintiffs sold their home in 2006 to another party to be used as a residence for a sum that was more than twice what they purchased it for in 2001. Clearly, the property was not deprived of all economic use, or even most of its use. As such, the Court finds that a constitutional taking under Article I, § 11, of the Virginia Constitution has not occurred.

## Damage

In order to establish damage under Article I, § 11, of the Virginia Constitution, Plaintiffs must prove that (1) an appurtenant right connected with the property is directly affected by a public use; (2) that the use inflicts a direct and special injury on the property which diminishes its value; and (3) when, as here, it is alleged to be a partial diminution in value, it will be compensable only if it results from dislocation of a specific right contained in the landowners' bundle of property rights.

The Supreme Court of Virginia in *Lambert v. City of Norfolk*, 108 Va. 259, 61 S.E. 776 (1908), gave a detailed analysis of the legislative history surrounding the 1902 Constitutional amendment which added the "or damaged" language to Article I, § 11. Before adoption of the Constitution, private property could be damaged by a municipality under its legislative authority and the landowner could not recover compensation for the damage. The enactment did not create any new right that an owner has in his land, but provided a right of action against the municipality where property was injured under legislative authority. Damage must be as existed at common law, and may not be damage to the feelings, tastes, or sentiments of the owners. *Id.* at 265, 61 S.E. at 778. Further, the Constitution does not authorize a remedy for every diminution in value of property or by making property less desirable for certain purposes or causing personal annoyances or discomfort. *Id.* at 266, 61 S.E. at 778.

In *Lambert*, the city located a cemetery on property adjoining the landowner. *Id.* at 260, 61 S.E. at 776. The Court held that any diminution in value to the property caused by a cemetery being located next to it did not result from an injury to the property itself. *Id.* at 267, 61 S.E. at 778. The Court further held that proximity to a public improvement does not afford

grounds for relief. *Id.* There must be interference with the plaintiff's property itself, "by noise . . . vibrations . . . or with some right appurtenant thereto." *Id., quoting Lewis on Eminent Domain*, sec. 236. The injury must not be common to both the property owner and the general public. *Id.* at 268, 61 S.E. at 779.

### Nature of Landowners' Claimed Injury

Plaintiffs testified in great detail about the purchase of their property and the desire to live in a quiet, rural setting. Plaintiffs further testified that the noise, vibrations, etc. from aircraft flying over their home has changed the character of the home.

Defendant argues this evidence is not relevant because it goes to the particular use that Plaintiffs had for their property and not whether the property itself has been damaged or diminished in value. The Court agrees with Defendant to the extent that Plaintiffs seek damages for a desire to reside in a "rural country environment." However, Plaintiffs also describe noise from low flying aircraft, smell of fumes, vibrations, and increase in number of flights over their property and of the type of aircraft flying over the property. Claims of noise and vibration are a disturbance in the use and enjoyment of their property and is a right contained in the legal "bundle of rights" property owners possess.

A useful comparison to damages relating to a property owner's "bundle of rights" is that of the law of nuisance. The interference with the right of quiet use and enjoyment of one's property by noise and vibration would support a common law claim of nuisance if caused by a private party. The 1902 Constitutional amendment was designed to create a cause of action for such nuisances caused by the government.

A nuisance created by a private individual includes "Noises which tend to disturb rest and quiet in the neighborhood." 14A M.J., *Nuisances*, § 8, *citing Herring v. Wilton*, 106 Va. 171, 55 S.E. 546 (1906). Depending upon the time, locality, and degree, noise may rise to the level of a nuisance. *Id.* The distinction between a nuisance created by a private individual and one by the government lies in the remedy afforded to each. *See generally*, 14A M.J., *Nuisances*, § 5. A nuisance created by a private individual may be enjoined or abated, while the remedy for a government created nuisance is compensatory damages where the nuisance is necessary for the public as a whole. Therefore, this case turns on whether Plaintiffs have established that Defendant committed a trespass or nuisance to their property affecting a right contained in their "bundle of rights" thus resulting in a diminution in the value of the

property. That is an injury causing reduction in value in the general marketplace, as opposed to a portion of the marketplace, which consists of those persons who prefer or place a premium on environments that are more quiet and secluded.

Having determined that the type of damages Plaintiffs seek compensation for are included in the bundle of rights available to all property owners, the Court turns to the last remaining issue, whether Plaintiffs have established damages in the Chesapeake marketplace for residential homes.

Plaintiffs provided an expert appraiser, Dennis Gruelle, who opined that the actions of Defendant have resulted in a diminution of value in their property; however, Mr. Gruelle did not perform an appraisal of the property. Plaintiffs argue that Mr. Gruelle does not need to perform an appraisal at this stage of the litigation to show the exact amount of damages claimed. Plaintiffs contend they only need show that damage exists and that the exact amount of damages should be determined in a proceeding before a jury should the Court rule in Plaintiffs' favor on the declaratory judgment. Defendant argues that Mr. Gruelle's testimony is based upon speculation and should be inadmissible, or if admitted not considered credible on the issue of diminution of value.

Defendant in arguing that Gruelle's testimony is speculative, refers to *City of Virginia Beach v. Oakes*, 263 Va. 510, 561 S.E.2d 726 (2002). In *Oakes*, the City acquired a portion of the landowner's property for the construction of road and utility improvements. *Id.* at 512, 561 S.E.2d at 726. The testimony provided by the expert was based on general discussions with real estate brokers of the possible negative impacts development of the acquired land would have. *Id.* at 514-15, 561 S.E.2d at 727-28. The Supreme Court of Virginia held that speculative testimony by an expert was not sufficient in condemnation cases to demonstrate damages to a residue. *Id.* at 517, 561 S.E.2d at 729. (The expert in *Oakes*, was Mr. Gruelle.)

The basis for the Court's ruling in *Oakes* was that Mr. Gruelle's testimony was based upon an office building that one of the plaintiff's experts in land planning had "envisioned" could have been constructed upon the land before the taking and lost profits caused by a decrease in rents because of the reduction in size of the hypothetical building, the construction of which required the approval of zoning changes by the City. *Id.*

In the present case, Mr. Gruelle's opinion was based on conversations with Plaintiffs, their neighbors, and experts hired for this litigation, Mr. Glassman, the pilot expert, Mr. Paradis, the sound expert, and Mr. Barrow, the planning expert, and the ILS impact on Plaintiffs' use of the property. Mr. Gruelle testified that, because the ILS directed aircraft directly over Plaintiffs' house, the increase in air traffic, the types of aircraft landing at the CMA, and

that the Plaintiffs' house was for residential use, the property suffered damage that resulted in a diminution in value. These facts are not speculative. It is clear that the property has suffered a significant increase in volume, frequency, and vibrations from noise due to aircraft flying directly overhead. There is no requirement under the Virginia Constitution that the damage be significant as argued by Defendant. The only requirement is that a partial diminution in value be attributable to a violation of Plaintiffs' "bundle of rights" by actions of the government.

In sum, Plaintiffs have suffered injury to their property in the nature of noise and vibration, constituting a nuisance as it affects the property itself by prohibiting quiet use and enjoyment. Property owners in the City of Chesapeake or those in the general vicinity of the CMA do not share this injury. There is no requirement that Plaintiffs establish a threshold dollar amount in order to have the Court find constitutional damage. The exact amount of damages is not important at this stage as Plaintiffs seek a declaratory judgment pursuant to Va. Code § 8.01-184, 1950, as amended.

## Ruling of the Court

### Taking

The Court finds that a constitutional taking under Article I, § 11, of the Virginia Constitution has not occurred.

### Damage

The Court finds that Plaintiffs have established damage under Article I, § 11, of the Virginia Constitution and that, if not compensated, they are entitled to a proceeding under Va. Code § 8.01-187, 1950, as amended, to determine just compensation. This ruling, once memorialized by entry of an order constitutes a final order in this case. The Court will allow the necessary period following entry for either or both parties to appeal this decision before any action pursuant to Va. Code § 8.01-187, 1950, as amended, may begin. If an action pursuant to Va. Code § 8.01-187, 1950, as amended, is filed, the Court will order that the parties participate in a settlement conference pursuant to Va. Sup. Ct. R. 1:19.