Present: Kinser, C.J., Lemons, Millette, Mims, and McClanahan, JJ., and Lacy and Koontz, S.JJ.

TIMOTHY BYLER

v.  Record No. 112112

VIRGINIA ELECTRIC AND POWER COMPANY

OPINION BY
SENIOR JUSTICE LAWRENCE L. KOONTZ, JR.
September 14, 2012

ROGER D. WOLFE, ET AL.

v.  Record No. 112113

VIRGINIA ELECTRIC AND POWER COMPANY

FROM THE CIRCUIT COURT OF FAUQUIER COUNTY
Jeffrey W. Parker, Judge


In these appeals we consider whether Article I, Section 11 of the Constitution of Virginia provides for a cause of action by a landowner for inverse condemnation when the allegation of the complaint is that the landowner's property has been "damaged" by a diminution in value resulting from a public utility's construction and operation of an electrical transmission line for public use on nearby property.

BACKGROUND

These cases were consolidated for trial and arise from substantially similar facts.  On May 19, 2011, Timothy A. Byler filed in the Circuit Court of Fauquier County a complaint for declaratory judgment against Virginia Electric

and Power Company ("VEPCO") alleging that he was the owner of "[a] developable tract of land consisting of 1 acre with improvements" at 2303 Courthouse Road in Catlett, Virginia. Byler alleged that as the result of the construction by VEPCO of 230 kilovolt electric transmission lines "[o]n land abutting and in proximity to" Byler's property, the property was "less valuable, marketable and desirable" and "as a whole suffered and suffers a diminution in value."[1]  Byler further alleged that the property was no longer suitable for its former "highest and best use," which was as a residence. Pursuant to Code § 8.01-187, Byler requested that the court find the damage constituted an inverse condemnation under Article I, Section 11 and empanel a jury of commissioners to determine just compensation and other relief as provided for in Code § 25.1-420.

Also on May 19, 2011, Roger D. Wolfe and Kathleen E. Wolfe filed a substantially similar complaint against VEPCO alleging that they were the owners of "[a] developable tract of land consisting of 2.35 acres with improvements" at 2381 Courthouse Road in Catlett.  As Byler had alleged in his

---

[1] The construction of the lines was pursuant to a certificate of public convenience and necessity issued by the State Corporation Commission ("SCC") to VEPCO on March 10, 2010, and was part of a larger project for the construction of a 500 kilovolt transmission line from Warren County to Loudoun County approved by the SCC in 2008.

complaint, the Wolfes alleged that the construction of the transmission lines caused a diminution in value of their property because it was not possible to "buffer their prime developable site and home from [the transmission lines'] blighting effects." They further alleged that the proximity of the transmission lines to their property created a "strong negative resistance" in the market for "using [their] property as a residence." The Wolfes sought an award of damages for inverse condemnation under Code §§ 8.01-187 and 25.1-420.[2]

VEPCO filed identical demurrers and supporting briefs to both complaints, asserting that the complaints failed to state a claim for inverse condemnation because no property right belonging to Byler and the Wolfes was actually taken or damaged by the construction of the transmission lines, and further that the complaints did not allege that the properties had been deprived of all economic value as a result of the placement of the lines in proximity to the properties. See, e.g., City of Virginia Beach v. Virginia Land Investment Ass'n., 239 Va. 412, 416-17, 389 S.E.2d 312, 314 (1990);

---

[2] Both complaints also asserted a claim for monetary damages for common law nuisance. VEPCO contended that this claim was barred by the doctrine of legislative authorization. See, e.g., State Hwy. & Transp. Comm'r v. Lanier Farm, Inc., 233 Va. 506, 510-11, 357 S.E.2d 531, 533-34 (1987). The circuit court sustained VEPCO's plea in bar and dismissed the nuisance claims. Byler and the Wolfes have not appealed the dismissal of their separate counts for common law nuisance.

Commonwealth v. County Utilities Corp., 223 Va. 534, 542, 290 S.E.2d 867, 872 (1982).  Relying on Lambert v. City of Norfolk, 108 Va. 259, 266, 61 S.E. 776, 778 (1908), VEPCO further contended that "diminution in value alone cannot be the basis of an inverse condemnation claim."

Byler and the Wolfes responded to the demurrers by asserting that their complaints "put[] VEPCO on notice as to the nature and character of [their] claim[s]" for inverse condemnation and, thus, were sufficient to survive a demurrer. They maintained that the "blighting effects" of the transmission lines "could be anything from noise, smoke, or dust to the interference with light, air, or view or one of the other appurtenant rights to property," which would constitute a physical interference with those rights and thus constitute "damage" under Article I, Section 11.  Accordingly, they contended that inquiring "into the nature of the blighting effects" was a disputed issue of fact to be developed though a bill of particulars or at trial.

The circuit court conducted a hearing on VEPCO's demurrers on August 26, 2011.  The parties reiterated the contentions previously made in their pleadings.  The court stated its rationale for sustaining the demurrers, which it subsequently adopted by reference in final orders entered at the conclusion of the hearing.  The court opined that there

4

was "no taking at all," but "simply . . . the allegation of blighted property." Accordingly, because the complaints did not allege "that the entire property has been rendered useless" and "[t]he property can still be used," there was no cause of action for inverse condemnation on the facts as alleged. The court further opined that even if given the opportunity to amend, the complainants could not allege facts to support an allegation that their property had lost all economic value. Accordingly, the court sustained the demurrers with prejudice, rather than granting leave to amend.[3]

We awarded appeals to Byler and the Wolfes to address the following assignment of error:

> The circuit court erred by holding that a damaging under Article I, Section 11 of the Constitution of Virginia only occurs when a property has been rendered totally useless by a condemnor's project.

DISCUSSION

As relevant to the issue raised in these appeals, Article I, Section 11 of the Constitution of Virginia provides, "no person shall be deprived of his . . . property without due process of law [and] the General Assembly shall not pass . . . any law whereby private property shall be taken or damaged for

---

[3] Although counsel for Byler and the Wolfes indicated during a colloquy with the circuit court that he "can allege" the property had been deprived of all economic value, error has not been assigned to the court's decision not to grant leave to amend.

5

public uses, without just compensation." (Emphasis added.) Where a property owner believes that his property has been taken or damaged within the meaning of this Constitutional provision and compensation has not been paid, the remedy afforded by statute is for the property owner to file a complaint for declaratory judgment to determine the compensation to be paid. Code § 8.01-187.

Byler and the Wolfes contend that the circuit court erred by concluding that when, as here, there is no physical taking of property through a government-authorized act, an inverse condemnation will be found only where the property has been deprived of all economic use. In applying this standard to a damage claim, they contend that the court essentially applied a standard that "erased the 'damage' clause from the Constitution."

Although VEPCO does not concede that the circuit court's application of the "deprived of all economic use" standard to these cases was error, neither did it offer any defense of that standard in briefing these appeals. Rather, VEPCO responds that even if it is assumed that the court applied the wrong standard, its judgment may nonetheless be upheld under "a right result, wrong reason" analysis because VEPCO further argued below that the complaints failed to state any damage to a property right, but only asserted an economic loss. See

6

Shipman v. Kruck, 267 Va. 495, 509, 593 S.E.2d 319, 327 (2004); see also Deerfield v. City of Hampton, 283 Va. 759, 767, 724 S.E.2d 724, 728 (2012); Miller v. Highland County, 274 Va. 355, 372, 650 S.E.2d 532, 540 (2007).

The "deprived of all economic use" standard is derived from claims that a regulatory action by the government has resulted in a "categorical taking" which results in "a deprivation of all economic use of [the] property" without the acquisition of any right in the property by the government. Board of Supervisors of Culpeper County v. Greengael, L.L.C., 271 Va. 266, 287, 626 S.E.2d 357, 369 (2006). "[A] property owner may seek compensation for a categorical taking only when the state is exercising regulatory power over the 'bundle of rights' that the owner acquired when first obtaining title to the property." City of Virginia Beach v. Bell, 255 Va. 395, 400, 498 S.E.2d 414, 417 (1998). Thus, we agree with Byler and the Wolfes that this standard has no application to a claim for damage to an owner's property that is not the result of a regulatory restriction on the owner's property, but instead results from the public use of land in proximity to the owner's property.

However, we also agree with VEPCO that the circuit court's error in referencing this standard does not end the inquiry, because the court was presented with the alternative

argument that the complaints did not allege an actual taking of the property or damage to any appurtenant property right, but only asserted an economic loss resulting from "the infringement on [that] 'beneficial use and enjoyment' of the [p]roperty." If VEPCO is correct that a complaint for inverse condemnation must allege an actual taking of the property, physical damage to the property itself, or interference with a property right, and that the complaints in these cases did not do so, then, as we are in an equal position with the court below to judge the sufficiency of the pleadings and will do so de novo, Lee v. City of Norfolk, 281 Va. 423, 432, 706 S.E.2d 330, 334 (2011), the court's judgment may be upheld on that basis. See Perry v. Commonwealth, 280 Va. 572, 581-82, 701 S.E.2d 431, 436-37 (2010)(holding that if the factual record supports the determination, a judgment may be upheld on any basis apparent in the record).

Byler and the Wolfes assert that "an actual physical invasion of the owner's real estate" is not required to establish that the property has been damaged by a physical taking of adjoining land. Tidewater Ry. Co. v. Shartzer, 107 Va. 562, 569, 59 S.E. 407, 410 (1907). Rather, they contend that Shartzer, Lambert, and City of Lynchburg v. Peters, 156 Va. 40, 49, 157 S.E. 769, 772 (1931), all stand for the principle that the "damage" clause of Article I, Section 11 is

8

merely a waiver of sovereign immunity which subjects the Commonwealth, or others authorized to exercise the Commonwealth's power of eminent domain, to be "liable in the same manner as a private party under common law."

Byler and the Wolfes concede that Shartzer, Lambert, and Peters all included a requirement that "the common law at [that] time restricted actions for damages [against private parties] to those physically impacting a property or interfering with a right appurtenant to property." They contend, however, that in the time intervening between Peters, the last case to address directly this issue, and the present, the common law has been greatly expanded to include claims for injury to property against private parties based solely on economic considerations.[4] Thus, they contend that we should now recognize that a property can be "damaged" within the meaning of Article I, Section 11, when a public use, such as the construction and operation of the electrical transmission lines at issue here, on adjacent or proximate property results in a diminution of value of their property by interfering with

---

[4] Byler and the Wolfes principally rely upon Foley v. Harris, 223 Va. 20, 286 S.E.2d 186 (1982), to support their contention that a private party may be held liable for monetary losses that result from "aesthetic" damage to property. This reliance is misplaced. The basis for liability in Foley arose from the violation of a restrictive covenant, not a common law tort.

the use and "quiet enjoyment" of their property. We decline to make such a sweeping revision to the law of eminent domain.

First, we do not agree with the contention that the function of the "damage" clause of Article I, Section 11 is to waive sovereign immunity for the Commonwealth and its proxies in order to subject them to liability as private parties for _any_ damage asserted by a property owner that might conceivably arise from a public use of land adjoining or proximate to the property allegedly damaged. Rather, Article I, Section 11 has always been interpreted as a waiver of immunity for having to pay compensation for the actual taking of property or damaging of the property or a <u>property right</u>. As we explained in <u>Richmeade, L.P. v. City of Richmond</u>:

> Taking or damaging property in the constitutional sense means that the governmental action adversely affects the landowner's ability to exercise a right connected to the property. Thus, an action for inverse condemnation is an action seeking redress for the government's action in limiting property rights the landowner holds. In that regard, the act giving rise to the [claim] is not an act aimed at the property, but rather <u>an act that limits the landowner's ability to exercise his property rights</u> without paying the landowner for that limitation.

267 Va. 598, 602-03, 594 S.E.2d 606, 609 (2004)(emphasis added; citations omitted); <u>see also</u> <u>Board of Supervisors v. Omni Homes, Inc.</u>, 253 Va. 59, 72, 481 S.E.2d 460, 467 (1997), overruled in part on other grounds as stated in <u>Greengael</u>, 271 Va. at 287 n.12, 626 S.E.2d at 369 n.12; <u>Peters</u>, 156 Va. 40,

10

49, 157 S.E. 769, 772 (1931).  Thus, the long-standing rule in Virginia has been that a "partial diminution in the value of property [is] compensable only if it results from dislocation of a specific right contained in the property owner's bundle of property rights."  Omni Homes, 253 Va. at 72, 481 S.E.2d at 467 (citing Lambert, 108 Va. at 268, 61 S.E. at 778-79); see generally Livingston v. Virginia Dep't. of Transp., 284 Va. 140, 155-57, 726 S.E.2d 264, 273-74 (2012) (distinguishing physical damage to property from damage to an appurtenant property right in the context of an inverse condemnation).

Byler and the Wolfes did not allege in their complaints that the presence of the transmission lines was interfering with their ability to exercise any specific property right. Rather, they alleged that their properties were "less valuable, marketable and desirable" because they were no longer suitable for their "highest and best use" as residential properties.  Article I, Section 11 " 'does not, however, authorize a remedy for every diminution in the value of property that is caused by a public improvement.' " Shartzer, 107 Va. at 571, 59 S.E. at 410 (quoting Eachus v. Los Angeles Consol. Elec. Ry. Co., 37 P. 750, 751 (Cal. 1894); see also Lambert, 108 Va. at 267, 61 S.E. at 778 (quoting Shartzer with approval).  There must be some " 'damage to the property itself, [that] does not include a mere infringement

11

of the owner's personal pleasure or enjoyment.  Merely rendering private property less desirable for certain purposes, or even causing personal annoyance or discomfort in its use, will not constitute the damage contemplated by the constitution.' "  Shartzer, 107 Va. at 571, 59 S.E. at 410 (quoting Eachus, 37 P. at 751).  Proximity to a public use of land may "render the property less desirable, and even less salable; but this is not an injury to the property itself, so much as an influence affecting its use for certain purposes." Id. at 572, 59 S.E. at 410.

Accordingly, we hold that the complaints in these cases did not, and could not, state a cause of action for declaratory relief for inverse condemnation when the sole damage alleged was a diminution in value arising from the public use of proximately located property.  Thus, while the circuit court applied the wrong standard in reviewing the pleadings, its judgment sustaining the demurrers was nonetheless correct under the proper standard.

CONCLUSION

For these reasons, we will affirm the judgment of the circuit court sustaining VEPCO's demurrers to the complaints for declaratory judgment.

Record No. 112112 - Affirmed.
Record No. 112113 - Affirmed.

12