Richmond

## VIRGINIA ELECTRIC AND POWER COMPANY

### v.

## DR. ROBERT LADO, ET AL.

April 18, 1980.

Record No. 780738.

Present: Carrico, Harrison, Poff, Compton & Thompson, JJ.

· *Gregory N. Stillman (J. Sloan Kuykendall; Hunton & Williams; Kuykendall, Whiting, Costello & Hanes,* on brief), for appellant.
*William A. Johnston (Bruce E. Downing; Harrison & Johnston,* on brief), for appellees.

COCHRAN, J., delivered the opinion of the Court.

In the trial court, Virginia Electric and Power Company (Vepco) filed a petition for the condemnation of an easement of right-of-way over lands of Dr. Robert Lado and Lucia A. Lado, his wife, and W. LeRoy Corron, Trustee (the Owners), for the construction, operation and maintenance of the Mount Storm-Morrisville electric transmission line. Duly appointed commissioners viewed the property, heard the testimony of witnesses, and filed their report in which they awarded $17,880 for the property taken and $114,000 as damages to the other property of the Owners, for a total award of $131,880.

By final order entered March 2, 1978, the trial court overruled Vepco's exceptions and its motion for a new trial, and confirmed the commissioners' report.

On appeal,[1] Vepco argues that the trial court erred in two respects. First, Vepco contends the court erred in permitting the Owners' real estate appraiser to testify that the dangers incident to Vepco's transmission line destroyed the recreational value of a man-made lake (used for recreational purposes). Second, Vepco argues the court erred in refusing to strike from the record remarks made by the same witness and by counsel for the Owners to the effect that the Owners' property lying south of the proposed easement was "landlocked".[2]

The easement sought by Vepco was 150 feet in width, extended nearly one mile diagonally across the Lado land, and comprised approximately 17.88 acres of a 400-acre tract, roughly rectangular in shape, that fronted on State Route 55. A copy of the plat introduced into evidence showing the location of the easement is appended hereto. At its nearest points, the easement was 125 feet from the residence on the property, and 75 feet from the lake.

The condemnation petition described the respective rights of Vepco and the Owners in pertinent part as follows:

That a description of the work or improvements to be made upon the easement of right of way described herein is the construction, operation and maintenance of one or more lines of poles, towers or structures, together with all wires, attachments, equipment, accessories and appurtenances desirable in connection therewith (the facilities), for the purpose of transmitting or distributing electric power.

\* \* \*

That the estate, interest or rights sought to be acquired are

[1] The Owners filed motions to dismiss Vepco's appeal for alleged violations of the Rules. We overruled these motions by orders entered December 5, 1978 and January 3, 1979, respectively. The Owners filed a motion to reconsider their motion to dismiss the appeal for Vepco's alleged failure to file properly and timely a designation of the parts of the record to be included in the Appendix, and this matter was argued by counsel for the parties. We have reconsidered the motion and have again declined to dismiss the appeal.

[2] "Landlocked" is defined as follows in Black's Law Dictionary 790 (5th ed. 1979):

An expression applied to a piece of land belonging to one person and surrounded by land belonging to other persons, so that it cannot be approached except over their land. Access to such land will normally be via an easement from surrounding landowner.

the perpetual right, privilege and easement of right of way, as hereinabove and hereinafter more particularly described, . . . .

\* \* \*

The Company shall have the right to inspect, rebuild, remove, repair, improve, relocate such facilities on such right of way, and make such changes, alterations, substitutions, additions to or extensions of its facilities as the Company may from time to time deem advisable. The facilities shall be constructed in accordance with national safety codes in effect at the time of construction.

The Company shall at all times have the right to keep the right of way clear of all buildings or structures (except fences), trees . . . and shall have the further right to trim or fell any tree outside the right of way which, in the opinion of the Company, constitutes a hazard to, or may endanger the safe or proper operation of its facilities.

\* \* \*

The Owners, their successors and assigns, may use the right of way for any purpose not inconsistent with the rights herein sought to be condemned including, but not limited to, the right to construct, operate and maintain passways, roads, streets, railroad tracks, ditches, water, sewer, telephone, electric or other utility lines across the right of way, in such manner that the angle between the center line thereof and the center line of the right of way shall not be less than forty-five degrees, provided that such use does not interfere with or endanger the construction, operation or maintenance of the Company's facilities; that no buildings or other structures may be constructed on the right of way except as herein provided; and that the Owners shall not excavate or place fill material on said right of way or place or lay septic tanks or drain fields on said right of way, without the prior written consent of the Company. The Company shall at all times have the paramount right to cross or cut through such passways, roads, streets, railroad tracks, water, sewer, telephone, electric or other utility lines and to interrupt the use thereof, for the purpose of constructing, maintaining, operating, repairing, altering or replacing its facilities, provided, however, that any damage done by the Company in the exercise of such paramount right shall be repaired at the Company's own cost and expense.

The petition limited structures to be erected by Vepco to poles and towers not exceeding 150 feet in height, and expressly provided that no buildings or substations will be erected on the right-of-way.

The Owners filed a demurrer asserting, *inter alia,* that the petition was insufficient because it failed to apprise the Owners of the nature of the works to be constructed. More specifically, the demurrer stated that the failure of the petition to limit or define the number or size of "circuits, pole lines, wires or equipment" caused the condemnation "of a 'purported easement' to be virtually, if not actually, a fee simple taking". By order entered February 27, 1977, the trial court overruled the demurrer.

In the hearing before the condemnation commissioners, only two witnesses testified, Scott C. Humphrey for Vepco and William H. Ritter for the Owners. Both were qualified real estate appraisers.

The testimony of the witnesses differed little as to the value of the easement acquired by Vepco over 17.88 acres. Based upon comparable sales, Humphrey appraised the Lado land, exclusive of the lake and the dwelling, at $1,000 per acre, and the value of the easement at $900 per acre, for a total of $16,092. He appraised the depreciated value of the dwelling before the take at $36,461 and the value of the lake at $15,000. Based upon his experience, Ritter appraised the 400-acre tract, exclusive of the lake and the dwelling, at $800 per acre, and the value of the easement at $800 per acre, for a total of $14,304. But the testimony of the witnesses diverged widely as to damage to the residue of the Owners' property.

In Humphrey's opinion, the highest and best use of the land before and after the condemnation was "investment holding land", continuing the recreational use of the property until a market demand for subdivision lots arose. He testified that the condemnation rendered the dwelling a misplaced improvement, one that, if constructed after the condemnation, would not have been placed so close to the easement. He estimated that the location of the easement diminished the value of this improvement by one-third, or $12,153. He also concluded that a strip of land 150 feet on each side of the easement was required as a screen for the rest of the land, and was damaged $26,985, 75% of its fee simple value. His total estimate of damages, therefore, was $39,138, which represented the difference in fair market value of the residue before and after the taking of the easement.

Ritter testified that the highest and best use of the land prior to the condemnation was for subdivision purposes. He estimated that the condemnation damaged the 218.63 acres remaining on the north side of the easement 50% of their fee simple value of $800 per acre, or $87,452. In his opinion, the presence of the easement would be objectionable to a potential purchaser because of its "destruction of scenic beauty and other things that go along with that type of an

easement". Ritter testified that 163.49 acres on the south side of the easement and separated from the public highway by the easement were damaged $600 per acre, or $98,094, leaving the value after the take of $32,698. In Ritter's judgment, the highest and best use of the Lado land after the condemnation was agricultural, with the 218.63-acre parcel being suitable for grazing and the 163.49-acre parcel being suitable for growing timber. Ritter based his estimate of damage to the 163.49-acre parcel upon the theory that this smaller tract had become "landlocked", because, he testified, the easement had severed it from the 218.63-acre parcel and left it without road frontage.

Ritter testified that the residence on the land was damaged 50% of its value, or $20,000. In his opinion, the easement totally destroyed the value of the man-made lake, which he appraised at $13,500, because the proximity of the power line rendered recreational use "hazardous", and the lake was not needed for agricultural purposes. Counsel for Vepco moved to strike Ritter's testimony that the power line made use of the lake hazardous, on the ground that the witness was not qualified to testify as an expert on the subject, but this motion was denied. The total damage to the residue of the Lado land, according to Ritter, was $219,046, the difference in fair market value of the residue before and after the taking.

At the conclusion of the evidence, counsel for Vepco, out of the presence of the commissioners, moved the court to instruct the commissioners that the land south of the easement was not landlocked, unless the Owners stipulated that they will never be able to cross the easement. When counsel for the Owners refused to agree to such a stipulation, the trial court declined to instruct the commissioners as requested, ruling that the petition set forth the rights acquired and that opposing counsel could argue "as they wish as to the credibility of the opinions."

Counsel for Vepco argued to the commissioners that Vepco was acquiring only an easement, not fee simple title; that the Owners have the right to cross the easement; and that the Lado lands south of the easement are not landlocked. Counsel for the Owners argued that the terms of the easement taken were so comprehensive that the rights acquired amount to fee simple title, and if all rights were taken Ritter's description of the southern parcel as "landlocked", meaning without right of access, was correct; that the Owners have no right to cross the easement; and that a prospective purchaser would pay only timberland value for land without public road frontage and right of access.

We address the issues in reverse order, considering first the nature

and extent of the rights acquired by Vepco in the condemnation. Vepco is limited, of course, to the rights set forth in its petition.

Whether Vepco acquired an easement or fee simple title was a question of law to be resolved by the trial court, rather than a question of fact to be determined by the commissioners. The trial court properly assumed this responsibility at the outset of the litigation by overruling the Owners' demurrer asserting that Vepco was in effect acquiring fee simple title under the guise of acquiring an easement. Nevertheless, when the motion was made to instruct the commissioners that the rights taken by Vepco did not landlock the southern parcel, the trial court, after correctly ruling that the petition set forth the rights acquired, incorrectly ruled that the commissioners could properly evaluate the opinions of the witnesses on this subject. This ruling freed the commissioners to determine whether Ritter correctly concluded that the southern parcel was landlocked. The action of the trial court in permitting this question of law to be decided by the commissioners constituted error requiring reversal of the final judgment order.

The rights sought by Vepco as set forth in its petition were undeniably broad, but they resulted in the acquisition only of a perpetual easement of right-of-way, rather than fee simple title. Within the easement area, the rights of Vepco in constructing, maintaining, and operating its line or lines and appurtenant facilities are paramount. Vepco will determine what facilities it desires to install and maintain. Vepco may remove, relocate, and change the facilities as it deems advisable. Nevertheless, Vepco does not have the right to keep the right-of-way clear of fences, and it does not have the right to prevent the Owners from crossing the easement area.

The Owners are expressly given the right to use the right-of-way in any manner not inconsistent with Vepco's rights. The Owners may construct and maintain roads, streets, railroad tracks, and utility lines across the easement, provided the crossings are made at not less than forty-five degree angles. They may excavate and place fill material, septic tanks, and drain fields in the right-of-way only with Vepco's prior written consent. And Vepco has the "paramount right to cross or cut through" the Owners' crossings, tracks and utility lines "and to interrupt the use thereof" to carry out the purposes for which the easement was sought, subject to the proviso that any damage done by Vepco "in the exercise of such paramount right shall be repaired" at Vepco's expense. But this "paramount right" does not give Vepco the right to deny the Owners the right to cross the easement, either with or without fixed crossings. It gives Vepco the right, if necessary,

to interrupt temporarily the Owners' use of crossings on which Vepco is working.

In case of ambiguity, the petition will be construed against Vepco, just as contracts are construed against those who prepared them. *See Baird* v. *Dodson Bros. Exterminating,* 217 Va. 745, 749, 232 S.E.2d 770, 773 (1977); *Lipscombe* v. *Security Ins.,* 231 Va. 81, 84, 189 S.E.2d 320, 323 (1972). Therefore, we construe ambiguous provisions in the petition to reserve to the Owners undeniable rights of access to cross the easement. Utility easements, similar to but not identical to the one under consideration herein, have been so construed by the New York courts.

Thus, in *Clark* v. *State,* 15 N.Y.2d 990, 207 N.E.2d 606, 260 N.Y.S.2d 10 (1965), an easement for an electric transmission line gave the landowners the right to use the right-of-way for any purpose that did not interfere with the use of the easement. The Power Authority of the State of New York, the condemnor, stipulated that the landowners had the absolute right to cross the easement for the purpose of ingress and egress. The Supreme Court, Appellate Division, Fourth Department, 20 App. Div.2d 182, 245 N.Y.S.2d 787 (1964), reversed the Court of Claims, which had held that fee simple title was acquired, and limited the easement as stipulated. The Court of Appeals, in affirming, held that the easement was to be construed strictly against the condemnor, that the landowners had the right to cross the easement for purposes of ingress and egress, including the right to build roads across the lands and to use the roads in perpetuity, and that the condemnor would be held liable for any interference with these rights. *See also Lorig* v. *State,* 58 App. Div.2d 734, 396 N.Y.S. 2d 122 (1977), and *Gustafson* v. *State & Power Authority,* 76 Misc. 2d 260, 350 N.Y.S.2d 321 (1973), which both held that similar easements reserved to the landowners the right to cross the right-of-way. *Kravec* v. *State,* 40 N.Y.2d 1060, 360 N.E.2d 925, 392 N.Y.S. 2d 246 (1976), upon which the Owners rely, is inapposite. There, an easement for a drainage ditch was acquired, and the court held that the easement cut off clear right of access to the land, so that the land was deemed to be landlocked.

We hold that because the petition, correctly construed, shows that the Owners and their successors retain the right to cross the Vepco easement for purposes of ingress and egress to and from the parcel south of the easement, and Vepco may not deny them this right, the trial court erred in failing to instruct the commissioners to disregard Ritter's testimony that the acreage was landlocked.

■ As the case must be remanded for a new trial, it is necessary

to consider the admissibility of Ritter's testimony that the value of the man-made lake for recreational use was destroyed because of the hazardous proximity of the transmission line. Both Humphrey and Ritter testified to the value of the lake and of the dwelling as improvements to the Lado lands. Humphrey appraised the value of the land at $15,000, Ritter at $13,500. Both considered the dwelling as a misplaced improvement, and both concluded that the value of this improvement had been substantially diminished by the easement. In effect, Ritter also treated the lake as a misplaced improvement. However, he was not qualified to testify to any potential danger which the transmission line and other facilities located within the nearby easement posed to users of the lake.

The trial court generally retains sound discretion to determine the qualifications of an expert witness. *Noll* v. *Rahal,* 219 Va. 795, 800, 250 S.E.2d 741, 744 (1979); *Landis* v. *Commonwealth,* 218 Va. 797, 241 S.E.2d 749 (1978); McCormick on Evidence, § 13 (2d ed. E. Cleary 1972). But the facts must show that the witness "possessed sufficient knowledge, skill or experience to make him competent to testify as an expert on the subject matter of the inquiry". *Noll* v. *Rahal,* 219 Va. at 800, 250 S.E.2d at 744. Here, no facts were adduced to show that Ritter had any knowledge of the hazards incident to the maintenance of a transmission line in close proximity to a lake. Ritter was an expert on real estate values, but he was not an expert on electricity. Upon retrial, his testimony should be confined within the limits of his expertise.

For the reasons assigned, the judgment of the trial court will be reversed and the case remanded for a new trial consistent with the views expressed herein.

*Reversed and remanded.*

THEODORE PICKERELL

℄ R/W

ST. HWY. RT. No. 55

℄ R/W 2610' ±

CONC. MON.

FENCE 554'+16.1

2375'± N19°02'W

WILLIAM VINCENT ROBINSON

188.0'

I.P.

3135.0'

ROBERT LADO & LUCIA A.LADO

THEODORE PICKERELL

R/W S. 47° 10' E

5224.3'

175.1' 279.2' 891.0' 1485.0' 851.4' 224.4' 429.0' 275.9' 874.5

℄ N 15° 26' W 50.6'

I.P. STONE

928.6'

3250'

3564.0' (DEED) R-606+40.5

S 82° 19' W

HIGH KNOB, INC.

NOTE: THIS PLAT CONSTRUCTED BY DEED
RECORDED - D.B.O. PG. 16

AREA NORTH OF PROPOSED R/W = 218.63 ACRES
AREA OF PROPOSED R/W = 17.86 ACRES
AREA SOUTH OF PROPOSED R/W = 163.44 ACRES
TOTAL AREA = 400.00 ACRES (DEED)

MT. STORM - MORRISVILLE

| PLAT OF WHOLE TRACT SHOWING EASEMENT TAKING |
| PARCEL No.35 ROBERT LADO & LUCIA A. LADO |
| HAPPY CREEK DISTRICT WARREN COUNTY |
| VIRGINIA |
| DEC. 8, 1976 SCALE 1" = 400' |

S & W 12042.31

EXHIBIT A