PRESENT:  All the Justices

ROBERT KITCHEN, ET AL.

OPINION BY
v. Record No. 070322                   JUSTICE G. STEVEN AGEE
                                           February 29, 2008
CITY OF NEWPORT NEWS

FROM THE CIRCUIT COURT OF THE CITY OF NEWPORT NEWS
Von L. Piersall, Judge

Robert Kitchen[1] appeals from the judgment of the Circuit

Court of the City of Newport News which sustained the demurrer

of the City of Newport News (the City) to Kitchen's first

amended motion for judgment (motion for judgment), which pled a

claim for inverse condemnation.[2]  The circuit court ruled that

the motion for judgment "fails to state facts upon which the

relief demanded can be granted," but also made "additional

---

[1] Kitchen filed the motion for judgment along with
approximately 700 other parties.  All parties except Kitchen
were dismissed by the circuit court's final order "because they
do not share a common interest in the recovery of a single
judgment" and "are too diverse to participate in a single trial
or to join or consolidate under [Code § 8.01-267.1]."  Kitchen
does not assign error to that ruling, and we do not consider it.
Rule 5:17(c); Rule 5:27.  All the parties plaintiff are before
this Court with respect to the issues in this appeal, and our
reference to "Kitchen" includes all the parties plaintiff for
that purpose.
[2] Kitchen filed his original motion for judgment in the
circuit court on April 25, 2000, and took a voluntary nonsuit in
August 2001.  Kitchen then filed a class action suit in the
United States District Court for the Eastern District of
Virginia, but that court dismissed the case without prejudice on
a consent order.  Kitchen then filed another motion for judgment
in the circuit court on June 21, 2002.  The court entered an
agreed order on January 23, 2004, which permitted the filing of
a first amended motion for judgment, which is the pleading that

1

rulings in the event of an appeal."[3]   For the reasons set forth

below, we will reverse the judgment of the circuit court.

I.   Factual Background and Material Proceedings Below

On January 30, 2004, Kitchen filed the motion for judgment

alleging the following as facts.  On September 15-16, 1999, the

City received heavy rains during Hurricane Floyd, resulting in

flooding of the Brookside Subdivision, the Woodbridge Crossing

Subdivision, and the Heatherwood Subdivision (collectively the

"Subdivisions") within the City.  In addition to the 1999

flooding from Hurricane Floyd, Kitchen alleged the Subdivisions

"had been subjected to a series of frequent and regularly

recurring flooding, inundations, and/or overflows of water . . .

as a direct result of prior governmental action."  Kitchen also

averred that the City "caused such frequent and regularly

recurring flooding of and overflow onto [the Subdivisions];

culminated in the catastrophic flooding on September 15-16,

1999; and [has] <u>continued</u> to cause regularly recurring flooding

of and overflows in and about the aforesaid lands and premises

_____

is subject of this appeal and is referenced herein as the
"motion for judgment."
    [3] Counts I-III of the motion for judgment are pertinent to
this appeal.  Counts IV-VII alleged various theories of
negligence, but these counts were all dismissed by the circuit
court in the final order, and Kitchen does not assign error to
that ruling.  Rule 5:17(c); Rule 5:27.  We therefore only
consider the assignments of error as to Counts I, II and III.

on occasions since and after September 15-16, 1999." (Emphasis in original.)

Kitchen further alleged that the sloping topography and elevation above the Subdivisions caused water to converge into a creek identified as Jones Run. This watercourse runs through and adjacent to the Subdivisions and carries watershed runoff flowing through them. Jones Run is connected to Jones Pond, a body of water in the vicinity of and downstream from the Subdivisions, via a 60-inch pipe. Water from Jones Pond ultimately flows into the Warwick River. Kitchen contended that the City knew that Jones Run was the "sole conduit" for conveying storm water to Jones Pond and that the existing 60-inch pipe was "wholly undersized to adequately and sufficiently drain the watershed which empties into and through [the Subdivisions] under normal and ordinary conditions and circumstances."

Kitchen alleged the "City-permitted development" of land above the Subdivisions "substantially, dramatically, and critically increased the amount of water flowing down from the watershed through Jones Run behind [the Subdivisions] and into the Jones Pond 60-inch pipe conveyance system." Continuing, Kitchen also alleged that "the City intentionally and/or with reckless disregard for and with deliberate indifference to, the rights of the citizens, including Plaintiffs, ignored their

3

protests and developed the land upstream from [the Subdivisions], without an adequate drainage system." Kitchen further pled that the City had actual notice that when it permitted development of the land above the Subdivisions, that development would cause an increase in the down-stream flow of water through Jones Run and ultimately into the Subdivisions.

The motion for judgment stated that during the two days of rain from Hurricane Floyd on September 15-16, 1999, the Subdivisions "received, sustained, and were otherwise subject to substantial and inundating flooding, which flooding was far more profound and egregious than any other flooding caused by Hurricane Floyd in the City and in similarly situated [s]ub[d]ivisions." Kitchen alleged the "catastrophic overflowing and flooding of Jones Run" was the cause of "extensive, substantial, and devastating damage to and loss of . . . lawfully owned real and personal property."

In Count I of the motion for judgment, Kitchen contended that the City's actions that resulted in the flooding effected a taking of private property without just compensation in violation of the Fifth Amendment of the United States Constitution, and sought damages under 42 U.S.C. § 1983. In Count II, Kitchen alleged a taking of property by the City without just compensation and sought "monetary compensation from the City under Article I, § 11 [of the Virginia Constitution]

4

'upon an implied contract' that the City will pay Plaintiffs 'such amount as would have been awarded if the property had been condemned under the eminent domain statute.' " (quoting from Burns v. Board of Supervisors, 218 Va. 625, 627, 238 S.E.2d 823, 825 (1977)).  In Count III, Kitchen sought a declaratory judgment and requested damages for the alleged taking pursuant to Code § 8.01-187.  Kitchen sought $20,000,000 in compensatory damages, including pre-judgment and post-judgment interest.

The City responded by demurrer contending that the motion for judgment "fails to state a claim upon which relief can be granted."  The City argued Count I should be dismissed because the federal takings claim was not ripe for consideration and because Kitchen failed to allege the deprivation of a federal right which was the result of a policy of the City.  The City averred that Counts II and III should be dismissed because "an act of negligence committed by a government official may not form the basis for an action of inverse condemnation under state law."  The City also argued Counts II and III should be dismissed because the alleged injuries for inverse condemnation "did not occur during the construction or operation of a public improvement" and that the exclusive remedy for inverse condemnation under state law is the procedure under Code § 8.01-187.

The circuit court considered the demurrer and other motions at a hearing on December 29, 2005, but did not rule at that time.  Apparently another hearing was held on April 25, 2006, in which the court announced its ruling from the bench sustaining the demurrer and Kitchen moved for leave to amend his motion for judgment.[4]  The circuit court later denied that motion in its final order "in light of the length of time this matter has been pending and the number of opportunities already afforded to the Plaintiffs to plead and re-plead their claims."

On November 7, 2006, the court entered the final order in which the City's demurrer was sustained and the motion for judgment was dismissed with prejudice.  The final order stated with respect to Counts I, II and III:

> [A]s a matter of law, a single occurrence of temporary flooding fails to state a cause of action, and . . . while the First Amended Motion for Judgment contains allegations of regularly recurring flooding, it fails to allege how frequently such flooding occurred; whether such flooding occurred in the same place and to the same extent as the flooding that occurred in September, 1999; whether all or only some of the same parcels of real estate were affected by the alleged previous flooding as were affected by the flooding that occurred in September, 1999; or whether the flooding which allegedly previously occurred was caused by the same mechanism as allegedly caused the flooding that occurred in September, 1999.

---

[4] A transcript of the April 25, 2006 hearing is not contained in the appellate record.  Kitchen's brief on appeal asserts that "no court reporter was present" at that hearing. The court's final order of November 7, 2006 is the only indication in the appellate record that a hearing was conducted on April 25, 2006.

6

Accordingly, the Court further FINDS that the First Amended Motion for Judgment fails to state facts upon which the relief demanded can be granted.

The circuit court then made "additional rulings in the event of an appeal to and review by the Virginia Supreme Court." First, the court held with respect to Count I, that "a claim under the Fifth Amendment . . . is not ripe for consideration."[5] Second, the court ruled with respect to Count II, that "a claim for inverse condemnation . . . under Article I, Section 11, of the Virginia Constitution . . . fails to state a cause of action because [Code § 8.01-187] constitutes an inverse condemnation claimant's exclusive remedy against a municipal corporation." We awarded Kitchen this appeal.

## II. Standard of Review

We have often stated the standard of review for a circuit court's judgment sustaining a demurrer:

Because appellate review of the sustaining of a demurrer involves a matter of law, we review the trial

[5] At the hearing on December 29, 2005, counsel for Kitchen explained to the circuit court that the federal claims were originally filed in state court, nonsuited, and then refiled in federal court. Kitchen also explained that when he anticipated that the federal court would require the state takings claims to be adjudicated first, he "withdrew the suit from federal court and brought it back" to state court, including the federal Fifth Amendment claim. Kitchen, concerned about potential issues with the federal statute of limitations in his state court action, advised the circuit court, "I think the Court can rule that it's not ripe without dismissing it." Kitchen also asked the circuit court to "fashion a remedy that does not dismiss it but that keeps the claim in abeyance . . . pending the outcome of the state law claims."

7

court's judgment de novo. In doing so, we are required to address the same issue that the trial court addressed, namely whether the . . . motion for judgment alleged sufficient facts to constitute a foundation in law for the judgment sought, and not merely conclusions of law. To survive a challenge by demurrer, a pleading must be made with sufficient definiteness to enable the court to find the existence of a legal basis for its judgment. In other words, despite the liberality of presentation which the court will indulge, the motion must state a cause of action.

Hubbard v. Dresser, Inc., 271 Va. 117, 122-23, 624 S.E.2d 1, 4 (2006)(internal quotation marks and citations omitted). We have also explained:

A demurrer tests the legal sufficiency of a pleading and can be sustained if the pleading, considered in the light most favorable to the plaintiff, fails to state a valid cause of action. We consider as admitted the facts expressly alleged and those which fairly can be viewed as impliedly alleged or reasonably inferred from the facts alleged.

Welding, Inc. v. Bland County Serv. Auth., 261 Va. 218, 226, 541 S.E.2d 909, 914 (2001) (citation omitted). We apply these standards to our review of the circuit court's final order in the case at bar.

III. ANALYSIS

On appeal, Kitchen makes four assignments of error. First, he argues the circuit court erred in sustaining the demurrer because Counts I, II and III of the motion for judgment did state a cause of action for inverse condemnation. Separately, Kitchen contends the circuit court erred in reaching the merits

8

of his Fifth Amendment claim under Count I because of its separate holding that the claim was not ripe.

Kitchen's third assignment of error is that the circuit court erred in determining Code § 8.01-187 precludes the Virginia constitutional claim he makes under Count II of the motion for judgment.  Lastly, Kitchen contends the circuit court erred in denying leave to amend the motion for judgment.

A. Cause of Action for Inverse Condemnation

We have described the nature of an inverse condemnation claim as follows:

> [A]n inverse condemnation action is a specific type of proceeding based on a constitutionally created right connected to the "taking" or "damaging" of property by the government.  To take or damage property in the constitutional sense does not require that the sovereign actually invade or disturb the property.  Taking or damaging property in the constitutional sense means that the governmental action adversely affects the landowner's ability to exercise a right connected to the property. Prince William County v. Omni Homes, 253 Va. 59, 72, 481 S.E.2d 460, 467 (1997); City of Lynchburg v. Peters, 156 Va. 40, 48-49, 157 S.E. 769, 772 (1931); Lambert v. City of Norfolk, 108 Va. 259, 265, 61 S.E. 776, 778 (1908). Thus, an action for inverse condemnation is an action seeking redress for the government's action in limiting property rights the landowner holds.  In that regard, the act giving rise to the [claim] is not an act aimed at the property, but rather an act that limits the landowner's ability to exercise his property rights without paying the landowner for that limitation.

Richmeade, L.P. v. City of Richmond, 267 Va. 598, 602-03, 594 S.E.2d 606, 609 (2004); see also Burns v. Board of Supervisors, 218 Va. 625, 627, 238 S.E.2d 823, 825 (1977).

9

Kitchen avers that the circuit court erred in holding, as a matter of law, that a single occurrence of temporary flooding cannot support a cause of action for inverse condemnation. However, even if it were assumed that the circuit court was correct, Kitchen contends that the motion for judgment contained more than sufficient allegations of "regularly recurring flooding" to have survived demurrer even on that point. Kitchen contends that Counts I, II and III sufficiently state a cause of action for inverse condemnation because "sixty-eight (68) separate paragraphs of allegations . . . covering some nineteen (19) pages of text" in the motion for judgment are "far more particularized and specific than the threshold pleading requirements for a sufficient complaint in Virginia" (citing Burns, 218 Va. at 629, 238 S.E.2d at 826; and Bell Atlantic-Virginia, Inc. v. Arlington County, 254 Va. 60, 486 S.E.2d 297 (1997)). Kitchen argues that the circuit court, by requiring specific allegations of when, how, and to what extent the flooding occurred, imposed an "exceptionally heightened and highly specific burden of pleading."

In response, the City contends "it is clear that the First Amended Motion for Judgment failed to state a claim notwithstanding its conclusory allegation that flooding of some unspecified magnitude occurred in the vicinity of the three [S]ubdivisions on a regular basis." The City asserts that

10

Kitchen was required to allege either permanent flooding or regularly recurring flooding on the property to state a legally cognizable claim. The City further argues that Kitchen's motion for judgment "does not involve a locality's failure to accept responsibility or to maintain drainage" and is based on damages from "an act of God." The City contends no liability can be imposed in that circumstance.[6] We agree with Kitchen.

To survive a demurrer, Kitchen was required to plead "sufficient facts to constitute a foundation in law for the judgment sought, and not merely conclusions of law," Hubbard, 271 Va. at 122, 624 S.E.2d at 4, which alleged "government[] action in limiting property rights the landowner holds." Richmeade, 267 Va. at 603, 594 S.E.2d at 609. Counts I, II and III of the motion for judgment plainly allege such facts sufficiently to survive the City's demurrer.

In his motion for judgment, Kitchen alleged "the City's actions and conduct . . . created and caused" the Subdivisions to be "the contingent retention or detention pond areas for

_____

[6] The City also argues that a claim for inverse condemnation may not be grounded on government action that amounts to negligence by its employees because an action under 42 U.S.C. § 1983 may not be based on principles of respondeat superior. The City further contends that as a matter of law, "inverse condemnation will not lie unless some positive, official government action causes the damage in question." The final order referenced neither of these grounds in sustaining the demurrer, and the City did not assign cross error to the circuit

water overflowing from the Jones Run and Jones Pond areas."  In particular, Kitchen pled in paragraph 9 of the motion for judgment that "as a direct result of prior governmental action" the Subdivisions "had been subjected to a series of frequent and regularly recurring flooding, inundations and/or overflows of water from the Jones Run watercourse."  Continuing, paragraph 10 pled that

> earlier actions of the Defendant City of Newport News caused such frequent and regularly recurring flooding of and overflow . . . culminated in the catastrophic flooding on September 15-16, 1999; and have continued to cause regularly recurring flooding of and overflows in and about the aforesaid lands and premises on occasions since and after September 15-16, 1999.

(Emphasis in original.)  As a consequence of these actions, Kitchen pled "the City did effect a taking of Plaintiffs' private real and personal property for public use." (Emphasis in original.)  By this taking the "City did permanently deprive plaintiffs of their property."

The circuit court's conclusion "that, as a matter of law, a single occurrence of temporary flooding fails to state a cause of action" for inverse condemnation is not before us in this appeal.  That conclusion is not relevant to the sustaining of the demurrer because the circuit court recognized the motion for judgment "contains allegations of regularly recurring flooding."

---

court's failure to rule on its claims.  Therefore, we do not consider either of these claims.  Rule 5:18; Rule 5:27.

12

Coupled with Kitchen's other allegations, as noted above, the circuit court's analysis should have ended there and resulted in the overruling of the City's demurrer. The circuit court's stated reasons for sustaining the demurrer, because the motion for judgment failed to plead flooding "in the same place and to the same extent as the flooding that occurred in September, 1999" and "whether all or only some of the same parcels of real estate were affected" are not relevant to whether the inverse condemnation cause of action was pled. While those items may be items of evidentiary proof at trial, none was necessary for purposes of the cause of action being sufficient to survive demurrer.[7] Richmeade, 267 Va. at 602-03, 594 S.E.2d at 609; Burns, 218 Va. at 627, 238 S.E.2d at 825; Bell Atlantic-Virginia, 254 Va. at 61-63, 486 S.E.2d at 298-99.

As the foregoing illustrates, Kitchen did not plead conclusions of law, but alleged specific, factual actions of the City which resulted in a taking of property. Such pleading meets the requirements for stating a cause of action for inverse condemnation as we recognized in Richmeade. 267 Va. at 602-03, 594 S.E.2d at 609; See also Burns, 218 Va. at 627, 238 S.E.2d at 825; Bell Atlantic-Virginia, 254 Va. at 61-63, 486 S.E.2d at

---

[7] As stated in Bell Atlantic-Virginia, "[w]e express no opinion, however, whether such a claim will be viable after the facts are fully developed by the evidence." 254 Va. at 63 n.3, 486 S.E.2d at 299 n.3.

298-99.  Therefore, the circuit court's judgment concluding that Counts I, II and III "fail[] to state facts upon which the relief demanded can be granted" and sustaining the demurrer was error.

## B. Ripeness

In his second assignment of error, Kitchen argues the circuit court "erred in reaching the merits of the legal sufficiency" of Count I (the Fifth Amendment Claim) because the court ruled that Count I "is not ripe for consideration." Kitchen argues "[i]t is manifest that Count I cannot be both ripe for consideration and thus demurrable on its merits, and at the same time, in the same Order, not ripe for consideration." (Emphasis in original.)  He contends that if Count I was not ripe for adjudication, the circuit court "should have held Count One in abeyance for further consideration only after the dismissal of Counts Two and Three."

The City responds that the circuit court correctly dismissed Count I as not ripe because the "United States Supreme Court has made it clear that litigation of a Fifth Amendment claim is premature unless there has been an adverse final judgment in a state law inverse condemnation proceeding." Citing Williamson County Reg'l Planning Comm'n v. Hamilton Bank, 473 U.S. 172 (1985), the City contends "a Virginia plaintiff

14

must seek a remedy under state law without success before a court may consider his claim under federal law."  We disagree.

Although the circuit court's final order seems to provide contradictory rulings as to Count I in that it is not ripe for consideration but nonetheless on the merits fails to state a claim as a matter of law, the inconsistencies are of no moment in resolving this appeal.  As stated above, sustaining the demurrer as to Count I for failure to plead a cause of action was error.  In addition, the circuit court's alternative ruling on ripeness was error.

> In Williamson County, the United States Supreme Court held:

> The Fifth Amendment does not proscribe the taking of property; it proscribes taking without just compensation.  Nor does the Fifth Amendment require that just compensation be paid in advance of, or contemporaneously with, the taking; all that is required is that a "'reasonable, certain and adequate provision for obtaining compensation'" exist at the time of the taking. If the government has provided an adequate process for obtaining compensation, and if resort to that process "[yields] just compensation," then the property owner "has no claim against the Government" for a taking.  Thus, we have held that taking claims against the Federal Government are premature until the property owner has availed itself of the process provided by the Tucker Act, 28 U.S.C. § 1491. Similarly, if a State provides an adequate procedure for seeking just compensation, the property owner cannot claim a violation of the Just Compensation Clause until it has used the procedure and been denied just compensation.

473 U.S. at 195 (1985) (citations omitted).  The Supreme Court further noted that "because the Fifth Amendment proscribes

takings without just compensation, no constitutional violation occurs until just compensation has been denied. The nature of the constitutional right therefore requires that a property owner utilize procedures for obtaining compensation before bringing a § 1983 action."  473 U.S. at 194, n.13.

In the two decades following <u>Williamson County</u>, some confusion developed as to whether that decision pronounced a state law exhaustion of remedies requirement before a plaintiff could bring a federal takings claim.[8]  In <u>San Remo Hotel, L.P. v. City & County of San Francisco</u>, 545 U.S. 323 (2005), the Supreme Court specifically rejected the "contention that <u>Williamson County</u> forbids plaintiffs from advancing their federal claims in state courts."  545 U.S. at 346.

> The requirement that aggrieved property owners must seek "compensation through the procedures the State has provided for doing so," does not preclude state courts from hearing simultaneously a plaintiff's request for compensation under state law and the claim that, in the alternative, the denial of compensation would violate the Fifth Amendment of the Federal Constitution. Reading <u>Williamson County</u> to preclude

---

[8] <u>See e.g.</u>, J. David Breemer, <u>Overcoming Williamson County's Troubling State Procedures Rule: How the England Reservation, Issue Preclusion Exceptions, and the Inadequacy Exception Open the Federal Courthouse Door to Ripe Takings Claims</u>, 18 J. Land Use & Envtl. Law 209, 265 n. 183 (Spring 2003) ("when a would-be federal court litigant ventures to state court to exhaust any potential avenues of obtaining compensation, in order to establish that a taking 'without just compensation' has actually occurred as required by <u>Williamson County</u>, he finds himself forced to raise the federal law takings claim even though he would prefer to reserve the federal claim for resolution in a section 1983 suit brought in federal court").

plaintiffs from raising such claims in the alternative would erroneously interpret our cases as requiring property owners to 'resort to piecemeal litigation or otherwise unfair procedures.'

545 U.S. at 346 (citations omitted).  The concurring opinion in

San Remo Hotel noted:

> Indeed, in some States the courts themselves apply the state-litigation requirement from Williamson County, refusing to entertain any federal takings claim until the claimant receives a final denial of compensation through all the available state procedures.  This precludes litigants from asserting their federal takings claim even in state court. . . . Williamson County does not command that the state courts themselves impose the state-litigation requirement.

Id. at 351 n.2. (Rehnquist, C.J., with whom O'Connor, Kennedy, and Thomas JJ., join, concurring) (citations and emphasis omitted).

Based on San Remo Hotel, we are persuaded that contrary to the City's contentions, Kitchen was not required to seek a remedy under state law (Counts II and III) without success before the circuit court could consider his Fifth Amendment claim (Count I).  Further, there is no Virginia rule requiring that result.  Kitchen was entitled to pursue his Fifth Amendment claims simultaneously with his state law claims.[9]  Therefore, the

---

[9] While a court may consider both the federal and state takings claims together, nothing in this opinion should be construed to create a requirement that such claims be adjudicated simultaneously.  Depending on the facts of a particular case, a court may appropriately exercise discretion in determining the order or method by which it will hear the state and federal claims.  As Kitchen suggested in this case,

17

circuit court erred in holding that Count I was not ripe for consideration.

C. Code § 8.01-187

Kitchen also assigns error to the circuit court's dismissal of his Virginia constitutional claim under Count II. According to the circuit court, that Count "fails to state a cause of action because Section 8.01-187 of the Code of Virginia constitutes an inverse condemnation claimant's exclusive remedy against a municipal corporation." Kitchen argues that Code § 8.01-187 is not the exclusive remedy for plaintiffs seeking just compensation after a taking, and that our jurisprudence supports the independent right to a jury trial for the Virginia Constitutional claim.

The City responds that the circuit court did not err and that Code § 8.01-187 does constitute the exclusive remedy for inverse condemnation against a municipal government. Citing Chaffinch v. Chesapeake & Potomac Tel. Co., 227 Va. 68, 313 S.E.2d 376 (1984), the City argues that Code § 8.01-187 became the sole remedy in lieu of the self-executing provisions of the

---

the better course could be to try the state claims first while holding the federal claim for later adjudication. In other circumstances, judicial economy and the facts presented may better warrant a joint trial. What the circuit court cannot do is dismiss the federal claim solely because a similar state claim is pending.

18

Virginia Constitution when that statute was adopted by the General Assembly.  We disagree.

Article I, Section 11 of the Constitution of Virginia provides that private property shall not be taken or damaged for public use without just compensation.  That section "is self-executing and permits a property owner to enforce his constitutional right to just compensation in a common law action.  We have held that such an action is not a tort action; rather, it is a contract action and, therefore, is not barred by the doctrine of sovereign immunity."  Bell Atlantic-Virginia, 254 Va. at 62, 486 S.E.2d at 298; Jenkins v. County of Shenandoah, 246 Va. 467, 470, 436 S.E.2d 607, 609 (1993); Burns, 218 Va. at 627, 238 S.E.2d at 825.

Code § 8.01-187 also provides a statutory remedy to determine compensation for property taken or damaged:

> Whenever it is determined in a declaratory judgment proceeding that a person's property has been taken or damaged within the meaning of Article I, Section 11 of the Constitution of Virginia and compensation has not been paid or any action taken to determine the compensation within sixty days following the entry of such judgment order or decree, the court which entered the order or decree may, upon motion of such person after reasonable notice to the adverse party, enter a further order appointing condemnation jurors to determine the compensation. The appointment of condemnation jurors and all proceedings thereafter shall be governed by the procedure prescribed for the condemning authority.

19

Our holding in Chaffinch is instructive on whether Code § 8.01-187 is the exclusive remedy for compensation when property is taken or damaged.  In Chaffinch, a homeowner filed a motion for judgment, claiming damages against a public service telephone company for damage to his property.  227 Va. at 69-70, 313 S.E.2d at 377.  The circuit court granted the telephone company's motion to dismiss on the grounds that Code § 8.01-187 was the exclusive remedy when a plaintiff alleges that his property has been taken by a condemning authority.  227 Va. at 70-71, 313 S.E.2d at 378.

On appeal, this Court reversed and stated Code § 8.01-187 "disturbs no vested rights and creates no new obligation. It merely supplies another remedy to enforce existing rights."  Id. at 71, 313 S.E.2d at 378 (citation and emphasis omitted).

We then considered the history of Code § 8.01-187 and explained:

> This statute was first added to the Declaratory Judgments Act soon after our analysis of that Act in Williams v. Bank of Norfolk, 203 Va. 657, 125 S.E.2d 803 (1962). There, we said:
>
> > Declaratory judgments "are intended to supplement rather than to supersede ordinary causes of action and to relieve litigants of the common law rule that no declaration of rights may be judicially adjudged until a right has been violated. Preventive relief is the moving purpose. Whether or not jurisdiction shall be taken is within the sound discretion of the trial court. Something more than an 'actual controversy'

20

> is necessary. In common cases where a right
> has matured or a wrong has been suffered,
> customary processes of the court, where they
> are ample and adequate, should be adopted."

Id. at 662, 125 S.E.2d at 806-07 (quoting American
Nat. Bk. v. Kushner, 162 Va. 378, 386, 174 S.E. 777,
780 (1934)). In Morris v. Tunnel District, [203 Va.
196, 123 S.E.2d 398 (1962)], an inverse condemnation
case decided earlier the same year, we had recognized
a common law right of action.  The General Assembly
was aware of these decisions when it enacted Code
§ 8.01-187, and we believe that if it had intended the
statutory proceeding "to supersede ordinary causes of
action", it would have said so on the face of the
statute. It did not, and we will not assume that the
omission was an oversight.

Id. at 72, 313 S.E.2d at 378-79.

Had our inquiry ended there, as perhaps it should, the
issue before us would have long ago been resolved.  However, we
left open the issue of whether the Code § 8.01-187 remedy was
exclusive when a claim was made against the Commonwealth or one
of its political subdivisions entitled to sovereign immunity as
opposed to a private entity with powers of eminent domain:

> when an inverse condemnation claim is asserted against
> the sovereign or one of its agencies or political
> subdivisions, there is some logic in the argument that
> the statutory mechanism was intended to be the sole
> remedy available.  But the logic fails altogether when
> the claim is one asserted against other parties.
> Public service companies have never enjoyed immunity
> from liability for damaging private property . . . .

Id. at 72, 313 S.E.2d at 378 (emphasis added).  We then held
that Code § 8.01-187 is "a statutory remedy [which] does not
preempt common law remedies against a non-sovereign entity
vested with the power of eminent domain unless the statute,

21

expressly or by necessary implication, so provides."  Id. at 72–73, 313 S.E.2d at 379.

Since our decision in Chaffinch, we have considered two other cases where a takings claim was made against a political subdivision of the Commonwealth under Article I, Section 11 of the Constitution.  See Hampton Rds. Sanitation Dist. v. McDonnell, 234 Va. 235, 360 S.E.2d 841 (1987) and Jenkins v. County of Shenandoah, 246 Va. 467, 436 S.E.2d 607 (1993).  The parties plaintiff in each case prevailed on their right to make the constitutional claim because, as we stated in Jenkins, Article I, Section 11 "is self-executing [and] permits a landowner to enforce his constitutional right to compensation in a common law action both 'where his property is taken for public uses and where it is damaged for public uses, irrespective of whether there be negligence in the taking or the damage.' "  246 Va. at 470, 436 S.E.2d at 609 (citation and emphasis omitted).  However, in neither case was the issue of Code § 8.01-187 as an exclusive remedy before the Court.  See McDonnell, 234 Va. at 238 n.2, 360 S.E.2d at 843 n.2 ("Code § 8.01-187 . . . now may provide the exclusive remedy for art. I, § 11 claims asserted against the sovereign, its agencies and political subdivisions. The question, however, is not before us in this appeal").

The issue is squarely before us in this case, and we hold Code § 8.01-187 is not the exclusive remedy for claimants making

an inverse condemnation claim against a political subdivision of the Commonwealth.  As we have said many times before, the provisions of Article I, Section 11 are "self-executing."  See Jenkins, 246 Va. at 470, 436 S.E.2d at 609; Burns, 218 Va. at 627, 238 S.E.2d at 825; Morris v. Elizabeth River Tunnel Dist., 203 Va. 196, 198, 123 S.E.2d 398, 400 (1962); Heldt v. Elizabeth River Tunnel Dist., 196 Va. 477, 482, 84 S.E.2d 511, 515 (1954). The enactment of Code § 8.01-187 does not change that analysis or evidence an intent on the part of the General Assembly to limit the right to make the constitutional takings claim.

As we said in Chaffinch, Code § 8.01-187 "disturbs no vested rights and creates no new obligation.  It merely supplies another remedy to enforce existing rights."  227 Va. at 71, 313 S.E.2d at 378 (citation and emphasis omitted).  As we also stated in Chaffinch, the General Assembly was well aware of our earlier decisions on the constitutional cause of action, and "if it had intended the statutory proceeding 'to supersede ordinary causes of action', it would have said so on the face of the statute.  It did not, and we will not assume that the omission was an oversight."  227 Va. at 72, 313 S.E.2d at 379 (citation omitted).  To read the statute otherwise would be to add language to the statute, and we refrain from doing so.  See Signal Corp. v. Keane Fed. Sys., 265 Va. 38, 46, 574 S.E.2d 253, 257 (2003).  ("In this Commonwealth, courts are required to

23

apply the plain meaning of statutes, and we are not free to add language, nor to ignore language, contained in statutes"). Code § 8.01-187 is not the exclusive remedy for an inverse condemnation claim against the Commonwealth or one of its political subdivisions. The Article I, Section 11 takings claim and the statutory takings claim are both claims which may be pursued.

Accordingly, the circuit court erred when it held Code § 8.01-187 "constitutes an inverse condemnation claimant's exclusive remedy against a municipal corporation."

### III. CONCLUSION

For the foregoing reasons, we will reverse the judgment of the circuit court and remand for further proceedings consistent with this opinion.[10]

<u>Reversed and remanded</u>.

---

[10] Kitchen's final assignment of error addresses the circuit court's denial of his motion for leave to amend the motion for judgment. However, having prevailed on all the issues for which he assigned error to the circuit court's grant of the demurrer and the alternative rulings, we need not address the circuit's refusal to grant Kitchen's motion to amend.