## CIRCUIT COURT OF WYTHE COUNTY

Edd Brooks Jennings
and Gordon W. Jennings,
Trustees

v.

Commonwealth Transportation
Commissioner of Virginia

July 18, 2011

Case No. CL05-03

By Judge Josiah T. Showalter, Jr.

Before the Court is a Petition for Declaratory Judgment filed on January 4, 2005, by the Petitioners, Edd Brooks Jennings and Gordon W. Jennings, Trustees, against the Commonwealth Transportation Commissioner of Virginia.

The Petition is an inverse condemnation action alleging the violation of Article 1, Section 11, of the Virginia Constitution. The Court has reviewed the post-trial memoranda as submitted by counsel and the appropriate case law.

The Court must decide if damages arose from the 2002 expansion of the I-77 Bridge affecting the Petitioners' property. The three matters of concern are (1) the waterline, (2) access easement, and (3) directing water onto the Petitioners' property.

### Factual Findings

The Court makes the following factual findings.

The Court finds that the Petitioners, Edd Brooks Jennings and Gordon W. Jennings, Trustees, are the legal owners of the subject property. This property is located in the Fort Chiswell Magisterial District of Wythe County, Virginia. The property in question can be found more specifically by deed dated November 15, 1993, of record in the Clerk's Office of the

Circuit Court of Wythe County, Virginia, in Deed Book 421 at page 629. The Court further finds that the property in question consists of two dwellings, out quarters, barns, a dairy, granary, horse barn, corncrib, hothouse, and other structures and improvements.

Commencing on April 16, 2002, the Respondent, Commonwealth Transportation Commissioner of Virginia (hereinafter referred to as "VDOT"), began construction on the Interstate 77 Bridge that crosses the New River, located in Wythe County, Virginia. It should be noted, in 1966, that the Commonwealth condemned approximately 27.98 acres from the properties of Edd Jennings (who was the Petitioners' grandfather); please see Order confirming Commissioner's Report entered May 7, 1966.

The Court finds the Wythe County Circuit Court Order entered on August 13, 1966, (and further shown by Plan Sheet 3) established a right of access over VDOT's property for the benefit of the Jenningses. The right of access affords the Petitioners access to their properties, which was divided by the condemnation proceedings in 1966. Please see Defendant's Exhibit No. 6. It is well-established law of this Commonwealth that a trial court speaks only through its written orders. *Cunningham v. Smith*, 205 Va. 205, 135 S.E.2d 770 (1964). See also, *Jefferson v. Commonwealth*, 269 Va. 136, 607 S.E.2d 107 (2005) ("deals with evidence of judicial action, that is a declaration of historical fact"). Furthermore, "orders speak as of the day they were entered." *Vick v. Commonwealth*, 201 Va. 474, 111 S.E.2d 824, and the Order of the Court becomes final twenty-one days after its entry unless vacated or suspended by the Court during that time. It should be noted that no order suspending or vacating the 1966 Order within twenty-one days of its entry appears in the record. Accordingly, the order became final twenty-one days after the entry.

The Court further finds that the Jenningses had a waterline on the subject property. The waterline was cut by VDOT. (It should be noted that VDOT did not know the waterline was present until it was cut.) See Petitioners' Exhibit No. 2 indicating an orange line indicating where the waterline is located. The waterline was omitted from the 2002 VDOT plans. Additionally, it is the finding of this Court that the elevation of the gravel road was not changed during construction. The waterline has not broken since it was repaired during the project (or after the 2002 project was completed) and operates properly.

The August 13, 1966, Order refers to a note on Plan Sheet No. 3, acknowledging that the Jenningses have a permanent easement of access. The Court further finds that the note on Plan Sheet No. 3 states, "The Roadway Under Bridge at or Near Sta. 1622+00 & Sta. 1626+80 is to Provide Passage Across the Right-of-Way With Access to the Traveled Roadway for the Adjoining Landowner." The landowners of this right-of-way are the Petitioners herein.

The Court finds that the 2002 construction plans, submitted by VDOT, failed to show the Jenningses permanent easement of access; it ignored their right. See Petitioners' Exhibits No. 9 and No. 10.

Because of VDOT's oversight, the Court finds that factually the Petitioners' permanent easement of access was changed due to the grade changing under the bridge. The construction plans were adopted and prepared by VDOT.

The Court finds that the Jenningses have used their permanent easement of access through a gate for over thirty years. Please see Petitioners' Exhibit No. 2 indicating the location of the gate as marked by an "x."

Before the 2002 construction, the Court finds that the Petitioners Jenningses were able to cross over this easement easily with farm equipment and vehicles; however, the grade of this easement changed due to construction debris, which was buried within the right-of-way. This created a change in the grade; the grade became steep. Consequently, the Jenningses were not able to cross their farm as they had previously, pre-2002 construction. The Court finds the Petitioner Edd Jennings' testimony to be credible. The Court finds that Mr. Jennings testified that, after the project, it was physically impossible to drive farm equipment, which he had done so previously, over their permanent easement of access. It is also noteworthy that VDOT's witness, Craig Jones, testified that it would be difficult to pull such equipment over the permanent easement of access (e.g. a mowing machine).

Prior to the project, the Jenningses were able to access a portion of their farm to the northwest of the Interstate 77 Bridge by entering the gate on the east side of the VDOT right-of-way and proceeding northward on their permanent easement of access until reaching their upper access road. The construction of the new bridge took and eliminated this access.

This Court finds that VDOT designed the project, including the storm water management system, and accepted the system as a completed project. Also, it was agreed between the parties that the subject property experienced erosion after the project, which was not present before the 2002 project. The evidence presented was that storm water escapes the VDOT's riprap and exits the right-of-way, coming onto the Jenningses' property. Because of the water escaping onto the Jenningses' property, it is eroding the Jenningses' upper access road. It was testified by Mr. Fowler that water escaping from the VDOT riprap is causing erosion and, thus, creating ditches, which vary in depth between six and fifteen inches. This was also substantiated by the Petitioners own testimony that there is erosion affecting their property.

*Waterline*

A. *Applicable Law*

The Constitution does not authorize a remedy for every diminution in the value of the property . . . [the] damage for which compensation is to be made is damage to the property itself. *Lambert v. City of Norfolk*, 108 Va. 259, 61 S.E. 776 (1908). Furthermore, the Virginia Supreme Court, in *Virginia Elec. & Power Co. v. Farrar*, 205 Va. 244, 135 S.E.2d 807 (1964), held that future apprehended damages do not constitute taking.

## B. *Holding*

The damage requested by the Jenningses is for future damages and is speculative. Although the waterline was cut, VDOT repaired the waterline, and it has not broken or been inoperable since repaired. The damages requested, again, are speculative in possible future damages.

There was no evidence offered regarding the damages, if any, to the subject property because of the waterline's being cut.

The Court holds that the Jenningses have no claim for damages as to this issue.

### Jenningses Permanent Easement of Access across Their Farm

## A. *Applicable Law*

Article 1, Section 11, of the Constitution of Virginia provides, "that no person shall be deprived of his life, liberty, or property without due process of law; that the General Assembly shall not pass any law impairing the obligation of contracts, nor any law whereby private property shall be taken or damaged for public uses, without just compensation. . . ."

An inverse condemnation action is an action in implied contract, not tort. *Jenkins v. County of Shenandoah*, 246 Va. 467, 436 S.E.2d 607 (1993).

Taking or damaging property in the constitutional sense means that the governmental action adversely affects the landowner's ability to exercise a right connected to the property. *Prince William County v. Omni Homes*, 253 Va. 59, 481 S.E.2d 460 (1997). Consequently, as held in *Kitchen v. City of Newport News*, 275 Va. 378, 657 S.E.2d 132 (2008), an action for inverse condemnation is an action seeking redress for the government's action in limiting property rights the landowner holds. The act, giving rise to the claim is not an act aimed at the property but rather an act that limits the landowner's ability to exercise his property rights, without paying the landowner for that limitation. See *Richmeade, L.P. v. City of Richmond*, 267 Va. 598, 594 S.E.2d 606 (2004).

*Virginia Elec. & Power Co. v. Lado*, 220 Va. 997, 266 S.E.2d 431 (1980), held that ambiguous provisions of a petition for condemnation are construed against the condemnor to reserve the owner undeniable rights of access to cross the easement.

According to the Virginia Supreme Court, an adverse condemnation action is a specific type of proceeding based on a constitutionally created right connected to the "taking" or "damaging" of property by the government. To take or damage property in the constitutional sense does not require that the sovereign actually invade or disturb the property. *Taking or damaging property* in the constitutional sense means that the governmental action adversely affects the landowner's ability to exercise a right connected to the property. *Richmeade, L.P. v. City of Richmond, supra.*

## B. *Holding*

The Jenningses, Petitioners herein, have had their property damaged; the Petitioners' access easement to their property likewise has been damaged. The Jenningses were able to cross easily with farm equipment and vehicles before the construction in 2002.

The grade of the easement changed. Construction debris was buried within the right-of-way. The grade became steep. The Jenningses were not able to cross their farm as they once did. It became impossible to utilize farm equipment across the easement. VDOT's Plan Sheet No. 3 note observes a "Roadway . . . to Provide Passage." However, the petitioner Edd Jennings testified that, after the project, it is "physically impossible" to drive farm equipment through their permanent easement of access. Construction of the new bridge eliminated access to portions of the Jenningses' property that was once employed by the Jenningses by use of the right-of-way.

The Jenningses ability to exercise the right connected of the property has been damaged. The Jenningses have a claim for damages associated with this issue.

## The New VDOT Project Directs Water onto the Jenningses' Property

## A. *Applicable Law*

Where a public improvement takes or damages private property and no just compensation has been paid, a property owner may bring an inverse condemnation action. *Kitchen v. City of Newport News, supra.* The Virginia Supreme Court also held in this case that the discharge of water onto property and occupation is a physical taking.

Taking or damaging property in the constitution sense means that the governmental action adversely affects the landowner's ability to exercise a right connected to the property. *Richmeade, L.P. v. City of Richmond,* 267 Va. 598, 594 S.E.2d 606 (2004).

B. *Holding*

VDOT designed the project, including the storm water management system, and accepted the system as a completed project. The subject property experienced erosion after the project, which was not present before the 2002 project. Storm water escapes the VDOT's riprap and exits the right-of-way, coming onto the Jenningses' property. Because of this water escaping onto the Jenningses' property, it is eroding the Jenningses' upper access road. The water escaping from the VDOT riprap is creating erosion ditches that vary in depth between six and fifteen inches.

This Court holds that this discharge of water affecting the property is a physical taking and affects the Jenningses ability to exercise a right connected to their property.